704 P.2d 333

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Douglas ANKNEY, Defendant-Appellant.**

**No. 15551.**

Supreme Court of Idaho.

July 15, 1985.

Darrel W. Aherin, Lewiston, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., and Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BAKES, Justice.

Douglas Ankney appeals from a district court order affirming the suspension of his driver's license. Ankney's driver's license was suspended after he refused to take the alcohol concentration test required by I.C. § 49–352.[1] The version of I.C. § 49–352 at issue here was repealed in 1984.

---

1. **49–352. Test of driver for blood alcohol.**— (1) Any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to an evidentiary test for alcohol concentration as defined in section 49–1102, Idaho Code, provided that such test is administered at the request of a police officer having reasonable grounds to believe that person has been driving or in actual physical control of a motor vehicle while under the influence of alcohol, drugs or of any other intoxicating substances, and in accordance with the rules and regulations established by the Idaho Department of law enforcement.

(2) At the time an evidentiary test for alcohol concentration is requested, the person shall be informed that:

(a) *If the test is refused, his license or permit will be seized by the police officer and forwarded to the court; and*

(b) *Upon receipt of a sworn statement by the police officer of the circumstances of the refusal, the court shall suspend his driving privileges for one hundred twenty (120) days; and*

(c) That he has the right to request a hearing before the court to show cause why he did not take or successfully complete the evidentiary test for alcohol concentration; if requested, the hearing must be scheduled within thirty (30) days of the request; that the hearing shall be limited to the question of why the defendant did not take the test, and that the burden of proof shall be upon the defendant; and

(d) He does not have the right to consult with an attorney before submitting to an evidentiary test for alcohol concentration; and

(e) After submitting to the test at the request of the police officer, he may, when practicable, have additional tests made by a person of his own choosing, and at no expense to the state, county or city. The failure or inability to obtain an additional test or tests by a person shall not preclude the admission of an evidentiary test for alcohol concentration taken at the direction of the police officer unless the additional test was denied by the police officer.

(3) *Suspension of driving privileges under this section shall be separate and apart from any*

On October 15, 1983, a Lewiston police officer stopped a Datsun pickup truck driven by Ankney. The officer stopped the pickup truck after observing the truck drifting from side to side, crossing the yellow line several times and, after clocking the pickup truck at 36 m.p.h. in a 25 m.p.h. zone.

The officer testified that following the stop, Ankney had some difficulty producing his driver's license; that his speech was slurred; that he talked in a low, shallow voice; and that his eyes were bloodshot. The officer also detected the odor of alcohol on Ankney's breath. After Ankney failed to do well on the field sobriety test, he was placed under arrest for operating a motor vehicle while under the influence of alcohol.

After being taken to the Lewiston police station, Ankney was read the I.C. § 49–352 advisory form. Ankney then refused to submit to the evidentiary test for alcohol concentration. Because of his refusal, his driver's license was seized pursuant to I.C. § 49–352. Ankney was also charged with violation of I.C. § 49–1102, driving while under the influence.

On October 17, 1983, an order was issued suspending Ankney's driving privileges for 120 days. Ankney then requested a hearing enabling him to show cause why he did not take the evidentiary test for alcohol concentration. Following a hearing on November 10, 1983, a magistrate determined that Ankney's driver's license was properly suspended. At this hearing Ankney testified that he did not take the test because he did not understand the form that was read to him and because he did not know whether he had a constitutional right to refuse the evidentiary test for alcohol concentration. Ankney then appealed to the district court. In an opinion dated May 10, 1984, the district court affirmed the magistrate's decision. This appeal followed. The suspension of Ankney's driver's license has been stayed pending this appeal.

Ankney first contends that I.C. § 49–352 fails to meet the due process requirements of both the Idaho and United States Constitutions. He argues that the statute's provisions which enabled a police officer to seize a person's driver's license prior to a hearing resulted in deprivation of property without due process of law, in violation of the fourteenth amendment of the United States Constitution [2] and Idaho Constitution, Art. 1, § 13.[3] We disagree.

Because the suspension of issued driver's licenses involves state action that adjudicates important interests of the licensees, drivers' licenses may not be taken away without procedural due process. *Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723,

---

other suspension imposed for a violation of other Idaho motor vehicle codes, and may be appealed to the district court.

(4) No hospital, hospital officer, agent, or employee, or health care professional licensed by the state of Idaho shall be held liable in damages in any civil proceeding for a cause of action based upon assault, battery or false imprisonment, or be subject to prosecution under chapter 9 or 29, title 18, Idaho Code, for any act arising out of administering an evidentiary test for alcohol concentration at the request of a police officer in the manner described by this section.

(5) "Actual physical control" as used in this section, shall be defined as being in the driver's position of the motor vehicle with the motor running or with the motor vehicle moving. (Emphasis added.)

2. § 1. [Citizenship—Due process of law— Equal protection.]—All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

3. § 13. Guaranties in criminal actions and due process of law.—In all criminal prosecutions, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf, and to appear and defend in person and with counsel.

No person shall be twice put in jeopardy for the same offense; nor be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law.

52 L.Ed.2d 172 (1977); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). The United States Supreme Court has held:

> "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Thus, these three factors must be considered in determining whether I.C. § 49–352 results in a deprivation of due process pursuant to the fourteenth amendment of the United States Constitution. Since this Court has previously held that "[t]he due process guarantees derived from both the United States Constitution and the Idaho Constitution are substantially the same," *Rudd v. Rudd,* 105 Idaho 112, 115, 666 P.2d 639, 642 (1983), consideration of these same three factors is necessary to satisfy the due process requirements of the Idaho Constitution.

■ The first step in the balancing process mandated by *Eldridge* requires identification of the nature and weight of the private interest affected. It is well recognized that an individual's interest in his driver's license is substantial. *See Mackey v. Montrym*, 443 U.S. 1, 11, 99 S.Ct. 2612, 2617, 61 L.Ed.2d 321 (1979); *Dixon v. Love*, 431 U.S. 105, 112, 97 S.Ct. 1723, 1727–28, 52 L.Ed.2d 172 (1977). However, the United States Supreme Court has determined that an individual's interest in his driver's license is not so substantial as to require a

pre-suspension hearing. *Dixon v. Love, supra.*[4]

Secondly, the likelihood of an erroneous deprivation of the private interest must be considered. The United States Supreme Court has stated:

> "[W]hen prompt postdeprivation review is available for correction of administrative error, we have generally required no more than that the predeprivation procedures used be designed to provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be. ...
>
> "As was the case in *Love*, the predicates for a driver's suspension under the Massachusetts scheme are objective facts either within the personal knowledge of an impartial government official or readily ascertainable by him. Cause arises for license suspension if the driver has been arrested for driving while under the influence of an intoxicant, probable cause exists for arrest, and the driver refuses to take a breath-analysis test. The facts of the arrest and the driver's refusal will inevitably be within the personal knowledge of the reporting officer.... At the very least, the arresting officer ordinarily will have provided the driver with an informal opportunity to tell his side of the story and ... will have had the opportunity to observe the driver's condition and behavior before effecting any arrest." *Mackey v. Montrym*, 443 U.S. 1, 13–14, 99 S.Ct. 2612, 2618–19, 61 L.Ed.2d 321 (1979) (citations omitted).

■ The third aspect to consider is the government's interest. As acknowledged by the Supreme Court, "the interest of the states in depriving the drunk driver of permission to continue operating an automobile is particularly strong." *Illinois v. Batchelder*, 463 U.S. 1112, 103 S.Ct. 3513, 3516, 77 L.Ed.2d 1267 (1983). In consider-

---

4. Although the Illinois statute considered in *Dixon v. Love* contained hardship provisions, which are not contained in the Idaho statute, the Supreme Court has stated that the provisions were "in no sense the 'controlling' factor in [the *Dixon*] decision." *Mackey v. Montrym*, 443 U.S. 1, 12, 99 S.Ct. 2612, 2618, 61 L.Ed.2d 321 (1979).

ing the strong state interest, the Court has noted:

"A presuspension hearing would substantially undermine the state interest in public safety by giving drivers significant incentive to refuse the breath-analysis test and demand a presuspension hearing as a dilatory tactic. Moreover, the incentive to delay arising from the availability of a presuspension hearing would generate a sharp increase in the number of hearings sought and therefore impose a substantial fiscal and administrative burden on the Commonwealth." *Mackey v. Montrym*, 443 U.S. at 18, 99 S.Ct. at 2621 (citations omitted).

■ Having considered I.C. § 49–352 in light of the above, we conclude that I.C. § 49–352 meets the procedural due process requirements of both the Idaho and United States Constitutions. Although an individual does have a substantial right in his driver's license, the state's interest in preventing intoxicated persons from driving far outweighs the individual's interest, particularly when the individual is entitled to the prompt post-seizure hearing mandated by I.C. § 49–352(2)(c). This prompt post-seizure review, coupled with the requirement that the police officer requesting the evidentiary test have reasonable grounds to believe the driver is intoxicated, prevents a high risk of erroneous deprivation.

■ Ankney also argues that the Idaho Code does not provide a statutory basis for giving either police officers or the courts *actual authority* to seize and suspend his driver's license. Ankney's reliance on this technical argument is misplaced. It is clear that in enacting I.C. § 49–352 the legislature intended for driver's licenses to be seized if a driver refused to submit to the evidentiary test for alcohol concentration. I.C. § 49–352(2) provides that "at the time an evidentiary test for alcohol concentration is requested, the person shall be informed that (a) if the test is refused, his license or permit will be seized by the police officer and forwarded to the court; and (b) upon receipt of a sworn statement by the police officer of the cir-

cumstances of the refusal, the court shall suspend his driving privileges for 120 days." Also, subsection (3) provides that "suspension of driving privileges under this section shall be separate and apart from other suspension imposed for violation of other Idaho motor vehicle codes...." The foregoing indicate a clear intention on the part of the legislature that, if a driver refuses to submit to the evidentiary test for alcohol concentration, his license will be seized and suspended. The procedure by which such a seizure was to be effected was a matter falling within the rulemaking authority of the Supreme Court, *accord State v. Currington*, 108 Idaho 539, 700 P.2d 942 (1985).

■ Idaho Misdemeanor Criminal Rule 9.2, in effect at the time of the events which give rise to this appeal, clearly gave authority to seize and suspend the license for failure to submit to the evidentiary test for alcohol concentration. The rule states in part: "In the event a person refuses to submit to an evidentiary test for alcohol concentration when required by a peace officer as provided by section 49–352, Idaho Code, the officer shall seize the driver's license of such person and forward it to the court...." The rule further states, "If the court finds that the sworn statement of the officer makes the necessary prima facie showing that the respondent refused to submit to an evidentiary test for alcohol concentration after having been properly requested to do so, the court shall thereupon enter an order suspending the driver's license of the respondent for 120 days pursuant to section 49–352, Idaho Code." We conclude that I.C. § 49–352, and Idaho Misdemeanor Criminal Rule 9.2, authorized the seizure and suspension of Ankney's license.

■ Ankney further argues that the provision of I.C. § 49–352 which states that a person does not have a right to consult with counsel before submitting to the evidentiary test deprives an individual of the constitutional right to counsel. We disagree. We continue to adhere to the views expressed in *Mills v. Bridges*, 93 Idaho 679, 471 P.2d 66 (1970). A person does not have

a constitutional right to consult with an attorney before deciding whether to submit to an evidentiary test for alcohol concentration. *Accord State v. Armfield*, 693 P.2d 1226 (Mont.1984).

 Finally, we find no merit in Ankney's argument that he was able to "show cause" as to why he refused to take the evidentiary test when he testified at the post-seizure hearing. Ankney's argument is, in effect, that so long as he was able to articulate *some* reason for not taking the evidentiary test he has shown "cause." The trial court concluded that no "cause" for refusal was shown, and that finding is supported by the record. Under Ankney's reading of the statute, any justification for not taking the test would be sufficient to excuse a person from the test. This interpretation is contrary to both good sense and the rules of statutory construction. Since the plain, obvious and rational meaning of a statute is always preferred, *State ex rel. Evans v. Click*, 102 Idaho 443, 448, 631 P.2d 614, 619 (1981), we decline to accept Ankney's reading.

Costs to respondent.

DONALDSON, C.J., and HUNTLEY, J., concur.

SHEPARD, Justice, specially concurring.

I concur in a substantial portion of the Court's opinion and in the result obtained because I view the principal thrust of the appeal to be from the suspension of Ankney's driver's license *by the court*. Thereby the driver's license of Ankney was suspended by a neutral, unbiased judicial officer upon the basis of probable cause. Although such suspension occurred without the availability of a hearing to Ankney, I agree that such was not a deprivation of due process since the State's interest in protecting the public is overriding and Ankney thereafter had an opportunity for a timely post suspension hearing.

If, however, the focus of the appeal had been the police officer's immediate seizure of Ankney's driver's license upon refusal to take the evidentiary test for alcohol concentration, I would have considerable concern with the result obtained by the majority. Clearly, our statute, I.C. § 49–352,[1] authorized such immediate seizure by an arresting police officer. The majority opinion would appear to suggest the validation of such an immediate seizure by an arresting officer based on *Mackey v. Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979), and *Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977). I suggest that neither of those opinions of the United States Supreme Court support the validity of a statute permitting such immediate seizure of a valuable property right by an arresting police officer. Rather, in *Mackey*, the registrar of motor vehicles in Massachusetts was statutorily authorized to suspend a motor vehicle license when a driver refused to take a breath analysis test and a police officer before whom such a refusal was made prepared a written report under oath, endorsed by a third person who witnessed the refusal, setting forth the grounds for which the person had been arrested and which report was endorsed by the police chief.

In *Dixon*, the Illinois Secretary of State was empowered to suspend drivers' licenses without a prior hearing in certain circumstances. The basis for the suspension was the Secretary of State having received notice that Love had been *convicted* of three driving charges.

I suggest that neither of those cases provide any authority for the validation of a statute which authorizes the peremptory seizure by a field police officer of a valuable property right without action by a neutral and detached official, be it judicial or otherwise.

BISTLINE, Justice, concurring and dissenting.

I.

I concur generally with the views set forth in the separate opinion of Justice

---

1. I.C. § 49–352 was repealed by S.L.1984, ch. 22, § 1, effective March 1, 1984.

Shepard, and especially emphasize my agreement with him that the majority errs in relying upon *Mackey v. Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) and *Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977) for the proposition that an arresting officer may seize a driver's license. If I were to agree with the majority, it would have to be on the basis of an implied grant of authority found by a strained reading of I.C. § 49–352(2)(a). For certain I do not succumb to the proposition that the Court's self-promulgated Idaho Misdemeanor Criminal Rule 9.2 is anything but substantive law—and the making of substantive law belongeth to the legislature—provided that it is constitutional. *State v. Currington*, 108 Idaho 539, 700 P.2d 942 (1985), was wrongly and poorly decided. *See* the separate dissenting opinions of Bakes, J., and Bistline, J., *supra*.

## II.

Neither the author of today's majority opinion nor I sat on *Mills v. Bridges*, 93 Idaho 679, 471 P.2d 66 (1970), which the majority declares stands for the proposition that "a person does not have a constitutional right to consult with an attorney before deciding whether to submit to an evidentiary test for alcohol concentration." I do not so read *Mills*. In that case, the arrested driver *was* given *Miranda* warnings, including "advising her of her right to counsel and right to remain silent.... She was advised that she would have an opportunity to call her attorney when they arrived at the sheriff's office.... Appellant was able to contact her attorney by phone." *Mills, supra*, 93 Idaho at 680, 471 P.2d at 67. Meanwhile, the one-hour time limit for giving consent had expired.[1] The issue on the appeal was whether or not the arrested driver gave her consent within the hour, which the Supreme Court found problematical, and also found that the driver "never offered to take the test." *Mills, supra*, 93 Idaho at 683, 471 P.2d at 70. Any doubt as to what the appeal involved is resolved by reading the clarifying separate opinion of Justice McQuade:

In advising a motorist of his right to counsel the officer is complying with the constitutional rights of a motorist in regards to criminal action which may be pressed against such motorist. To effectively implement *Miranda* warnings the officer must make available means by which a driver can contact an attorney for the purpose of obtaining information and advice with regard to his legal rights including those relating to a blood alcohol test. The attorney may inform the driver to take the blood alcohol test as a means to positively establish the blood alcohol content.

*Mills, supra*, 93 Idaho at 683, 471 P.2d at 70 (footnote omitted).

Clearly, the right to consult with counsel was recognized in that case, it was extended, and it was utilized. Moreover, and unmentioned in the Court's opinion, in addition to *Miranda* warnings under mandate of the federal constitution and the *Miranda* case, the arrested driver was in that case, and in this, clearly entitled to be informed of the right of counsel. I.C. § 19–853(a). *A fortiori*, it is because a person is entitled to counsel, but may not know it, which provides the basis of the requirement of being so informed. The majority's reliance on I.C. § 49–352 is clearly misplaced. Nor would I allow that

1. The Department of Law Enforcement rule concerning chemical test of operators in effect at that time is as follows:
2. The amount of time permitted a person to either refuse or submit to a chemical test is of importance. An hour's time is considered to be sufficient time for a person to decide whether or not to submit to a chemical test. In this matter the following rules will be followed:
....

(c) If a licensee indicates refusal to submit to a chemical test and then decides to submit within a one hour period of time the chemical test will be given.
(d) For the purpose of this regulation, the hour's period of time will be considered as beginning at the time the licensee is first requested to submit to a chemical test of his blood, breath, urine or saliva.
This rule, however, no longer exists.

I.C. § 18–8002, although better drafted than § 49–352, is valid. Not only does it conflict with I.C. § 19–853(a), but it is constitutionally infirm as well.

In turning away from *Mills, supra,* it is to be observed that this is the authority which the district court relied upon in affirming the magistrate's order of 120-day supervision. As pointed out by defendant's counsel—and entirely undiscussed in the majority opinion, *Mills* should be reconsidered because the suspension in that case was *administratively* imposed by order of the Director of the Department of Law Enforcement—whereas in this case the suspension order was *judicially* ordered by a magistrate of the judicial system. This is no small item, and proves the defendant's contention that the suspending of a license by a court smacks more of a criminal sanction than it does of a civil sanction. Going to the pertinent portion of defendant's brief in this Court (which might as well not have been written insofar as it seems to have aroused the majority's attention):

Another reason that the right to counsel exists even in a truly administrative setting under similar "implied consent" provisions was set forth recently by a federal court in South Dakota:

The civil and criminal nature of proceedings initiated against the person suspected of driving while under the influence of liquor or drugs is inextricably intertwined. Those jurisdictions which hold that the arrested driver does not have a right to contact an attorney prior to making a decision to submit to testing have established a clear demarcation between the initiation of civil and criminal proceedings. This Court finds the distinction much more blurred than these courts would have us believe.

\*　　\*　　\*　　\*　　\*　　\*

Those courts that rely on the civil/criminal distinction to hold that a person does not have the right to contact an attorney prior to making a decision regarding testing have ignored the fact that the person is originally arrested for a criminal offense. It is at the time of arrest that certain rights are afforded to the accused, including the right to consult with an attorney prior to making a statement. The obvious and intended effect of the implied consent law is to coerce the driver suspected of driving under the influence to consent to the sobriety test. The results of the blood alcohol level are then admissible against the driver in a subsequent prosecution for DWI. In effect the threat of license revocation (the civil proceeding) is a tool employed at the time of arrest to gather evidence against the driver to utilize in a later criminal prosecution. *Prideaux v. State Dept. of Public Safety,* 310 Minn. 405, 247 N.W.2d 385, 388–89 (1976). To say that the person does not have a right to contact an attorney prior to deciding whether to take the sobriety test, because the license revocation proceeding, initiated once the test is refused, is civil in nature totally ignores the fact that the person is in custody pursuant to an arrest on a criminal charge. The proceedings are all criminal in nature until testing is actually refused. *Heles v. State of South Dakota,* 530 F.Supp. 646, 651–52 (D.S.D.1982).

*Heles,* like the instant action, involved arrests made for driving while under the influence followed by license suspensions for refusing to submit to evidentiary tests for alcohol concentration. The court in *Heles* went on to hold that a "person arrested for DWI has a constitutional right to request to speak with an attorney prior to making the decision whether to submit to testing." *Id.* at 653. The court went on to note the limits of the rule, as of course there are countervailing considerations: "If an attorney cannot be reached within a reasonable period of time, the person may need to make an independent decision without the aid of counsel, so as to not unnecessarily delay the administration of the test." *Id.*

The decision in *Heles* was appealed to the Eighth Circuit, but was vacated on the grounds of mootness, as Mr. Heles had died in the interim. *Heles v. State of South Dakota,* 682 F.2d 201 (8th Cir. 1982).

Other courts have recognized a constitutional right to consult with counsel at the time a decision of whether to submit to an evidentiary test for alcohol concentration is to be made. *Prideaux v. State Dept. of Public Safety,* Minn. 247 N.W.2d 385, 387–391 (1976), followed reasoning similar to that in *Heles* even though the decision was reached on an independent statutory ground. Other decision, *Troy v. Curry,* 30 Ohio Misc. 144, 303 N.E.2d 925 (1973) and *People v. Gursey,* 22 N.Y.2d 224, 292 N.Y.S.2d 416, 418, 239 N.E.2d 351, 352 (1968), also recognize the right to counsel in this situation.

The only other argument which can be made against the constitutional right to counsel in the factual situation at hand is that the proceeding was not at a point where the right to counsel attached. However, the right to counsel under the Sixth and Fourteenth Amendments of the U.S. Constitution attaches when a critical stage in the proceeding is reached. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1965). In *State v. Fitzsimmons,* 93 Wash.2d 436, 610 P.2d 893, 897 (1980), the court quoted from another Washington case, *Tacoma v. Heater,* 67 Wash.2d 733, 409 P.2d 867, 871 (1966), which, along with noting the unique nature of the charge of driving under the influence, also stated:

> At what time was a "critical stage" reached in defendant's case? It was no later than the moment when, immediately after the police officers had conducted their tests for sobriety and had interrogated the defendant, they charged him with the offense.

Appellant's Brief, pp. 28–31.

Add to the foregoing the provisions of I.C. § 19–853(a) and a clear case of constitutional violation is made.

### III.

The majority cites *Rudd v. Rudd,* 105 Idaho 112, 666 P.2d 639 (1983), for the proposition that:

> The due process guarantees derived from both the United States Constitution and the Idaho Constitution are substantially the same.

Although I did not do so at the time I concurred in the *Rudd* opinion, having since learned that a more wary course is a more wise course, *State v. Peterson,* 81 Idaho 233, 340 P.2d 444 (1959), said by the author of the *Rudd* opinion to support the foregoing quotation, has been revisited. What was actually said in *Peterson* is this:

> Our constitutional **provisions** relating to searches and seizures and due process are substantially the same as those of the United States Constitution.
>
> *Peterson, supra,* 81 Idaho at 236, 340 P.2d at 447 (emphasis added).

The difference between the two phrases is astounding. More astonishing, however, is the misuse of literary license at this level of the judiciary.

I agree that the *provisions* of the two constitutions are much alike. But not so with the guarantees. The guarantees of the United States Constitution amount only to the protections derived thereby from interpretations of the Supreme Court of the United States, recently the Burger Court. The guarantees of the Idaho Constitution are the protections afforded thereby through interpreting opinions of *this* Court. The High Court itself has pointed out time after time that the supreme courts of the various states are wholly at liberty to increase those protections beyond the extent of the holdings of the High Court. Accordingly, I disavow the erroneous statement in *Rudd.*

This is also an opportune occasion to remark on another of our recent opinions wherein I was beguiled into accepting at face value a misapplication of the actual

**10**

statement of *Peterson.* That case is *State v. Cowen,* 104 Idaho 649, 662 P.2d 230 (1983), also a 1983 case. Therein this remarkable passage is found:

> We note at the outset that the provision of the Idaho Constitution, art. 1, § 17, prohibiting unreasonable searches and seizures, is to be construed consistently with the fourth amendment to the United States Constitution. *State v. Oropeza,* 97 Idaho 387, 545 P.2d 475 (1976); *State v. Peterson,* 81 Idaho 233, 340 P.2d 444 (1959).
>
> *Cowen, supra,* 104 Idaho at 650, 662 P.2d at 231.

Having no recollection of having focused on it before, I now disavow the statement, noting at the same time that it was mere obiter, and not necessary to our decision in that case. Anyone who can find in *State v. Oropeza,* 97 Idaho 387, 545 P.2d 475 (1976) and *Peterson, supra,* any support whatever for the above-quoted statement in *Cowen* should merit a substantial reward. Our holding relative to the automobile search in *Cowen* was simply that Cowen did not have the requisite standing to challenge the stop of the automobile. It may be noted that in the *Oropeza* opinion authored by Justice Mcquade, joined by Justices Donaldson and Bakes, a footnote there also mentioned the substantial similarity of the search and seizure prohibitions of the two constitutions, citing the *Peterson* case, *supra,* and more importantly, citing also *State v. Arregui,* 44 Idaho 43, 254 P. 788 (1927). *Arregui* made it indeed clear that the Idaho Court was well aware of its obligation to uphold the *independent* provisions of our Idaho Constitution, as well as complying with the obligation of upholding the Constitution of the United States. I report that the Supreme Court of the United States has in recent years and on many occasions pointedly stated that although the various states are bound to apply the fourth amendment, and other fundamental rights guaranteed by the federal constitution, the states (through their own constitutions, laws, and courts) are free to fashion greater protections for their people than those federally afforded. Those cases are so legion as to be unnecessary of citation or further comment. Suffice it to say that many enlightened states have done so. Our Idaho legislature in the field of providing legal representation to indigents has dictated that those indigents accused of crime shall have representation of the caliber that those more fortunate can obtain. The past few years hopefully reflect my indeavor to prod this Court into striving for the stability of establishing our own case law interpreting Idaho's Constitution. *See State v. Newman,* 108 Idaho 5, 10, 696 P.2d 856, 861 (1985):

> [F]ederal and state constitutions derive their power from independent sources. It is thus readily apparent that state courts are at liberty to find within the provisions of their own constitutions greater protection than is afforded under the federal constitution as interpreted by the United States Supreme Court. *See Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975). This is true even when the constitutional provisions implicated contain similar phraseology. Long gone are the days when state courts will blindly apply United States Supreme Court interpretation and methodology when in the process of interpreting their own constitutions.