IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 50746

AARON MICHAEL WHITE, )
)
  Petitioner-Appellant, )
)
v. )     **Lewiston, April 2024 Term**
)
IDAHO TRANSPORTATION )     **Opinion Filed: June 3, 2024**
DEPARTMENT, )
)     **Melanie Gagnepain, Clerk**
  Respondent. )
_____ )

Appeal from the District Court of the First Judicial District of the State of Idaho, Shoshone County. Barbara A. Duggan, District Judge.

The decision of the district court is <u>affirmed</u>.

Sullivan Law Office, PLLC, Coeur d'Alene, for Appellant. Joseph Sullivan argued.

Mark Alan Jackson, Coeur d'Alene, for Respondent. Mark Alan Jackson argued.

_____

BRODY, Justice.

This appeal concerns a petition for judicial review of the administrative suspension of Aaron White's driving privileges and whether the common law defense of necessity may be raised during an administrative license suspension ("ALS") hearing. White received a DUI citation and a notice of suspension of his driving privileges after he drove his wife to the hospital for emergency medical treatment following an ATV accident. During an Idaho Transportation Department ("ITD") ALS hearing, the ALS Hearing Officer rejected White's argument that his conduct was legally excusable under the necessity defense. The district court affirmed the ALS Hearing Officer's decision to sustain White's suspension. White timely appealed to this Court, arguing that the district court erred when it held White could not avail himself of the necessity defense in the ALS hearing. We affirm the district court's decision.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

On August 26, 2022, Aaron White and his wife Kristy White ("Kristy") were camping at a campsite in Shoshone County, Idaho. Kristy was injured after crashing her ATV. During the ALS hearing, Kristy testified that her injuries were severe, including a head injury, broken ribs, and a collapsed lung. She believed her injuries to be life threatening. White testified that he attempted to call 9-1-1 for an ambulance at their campsite; however, cell phone service was "spotty" and he was unable to successfully complete the call. White further testified he drove about "halfway down" "Two Mile Road" and, once they regained cell phone service, Kristy called 9-1-1 to request an ambulance. White gave the dispatcher their exact location and she informed him an officer was en route.

At approximately 1:00 A.M., Deputy Minier was dispatched to the scene and encountered the Whites near the bottom of the hill on Two Mile Road. White testified to the following exchange between himself and Deputy Minier:

> [W]hen we got down to the bottom of the hill, there was an officer down there. And he said, "Would you like me to call an ambulance?" And I said, "I don't know if we have the time." And he said, "I'll follow you there." And we drove to the hospital.

White testified that he understood Deputy Minier's offer to call an ambulance to mean an ambulance had not yet been requested when he and Kristy initially made the request to the 9-1-1 dispatcher. White testified that at the time he and Kristy encountered Deputy Minier, about an hour to an hour-and-a-half had passed since the time Kristy was injured. White believed an ambulance would take another fifteen to twenty minutes to arrive at their location. White testified that Kristy "was not herself by any means," had significant amounts of blood in her hair and on her face, and was not "conscious and alert and responsive to normal conversation." White was scared and worried about his wife's injuries and blood loss and wanted to protect her well-being by getting her to the hospital as quickly as possible.

As the Whites were about to leave the bottom of the hill on Two Mile Road with Deputy Minier following behind, a second law enforcement officer, Deputy Bowman, arrived at the scene. Deputy Minier informed Deputy Bowman he would follow behind the Whites' vehicle as White drove to the Shoshone Medical Center ("SMC"). All three vehicles arrived at SMC around the same time.

2

In his probable cause affidavit, Deputy Bowman of the Shoshone County Sheriff's Office ("SCSO") stated that he arrived at SMC at approximately 1:19 A.M. When he arrived, he observed White exiting the driver's seat of his truck, helping Kristy into the hospital, and then parking his truck in the parking lot. Deputy Bowman approached White and spoke to him next to White's truck. According to the affidavit, White was slurring his speech and speaking in a slow tone and Deputy Bowman asked him whether he had been drinking. White admitted to drinking six beers, the last at 9:00 P.M. (four hours prior), and, when prompted, White stated that he thought he was over the legal limit. Deputy Bowman then informed White he had reason to believe White operated a motor vehicle while under the influence of alcohol and asked White if he would be willing to perform field sobriety tests. White agreed. Deputy Bowman reported that White failed the Horizontal Gaze Nystagmus (HGN), walk and turn, and one leg stand tests. Thereafter, White agreed to a breathalyzer test and, at approximately 2:04 A.M., provided two breath samples. Deputy Bowman recorded White's breathalyzer results as .159 and .156 BrAC (breath alcohol content).

Deputy Bowman issued White a misdemeanor citation for driving under the influence, Idaho Code section 18-8004(1)(a), and a notice of suspension of his driving privileges pursuant to Idaho Code section 18-8002A, which mandates administrative license suspension when a driver fails evidentiary tests for alcohol concentration. After giving White the citation and notice of administrative license suspension, Deputy Bowman allowed White to re-enter SMC.

## B. Procedural Background

Three days after White was cited, he requested an ALS hearing before an ALS Hearing Officer to contest his license suspension. During the hearing, White did not dispute that he drove his vehicle while under the influence of alcohol in excess of the legal limit. Rather, White argued that his conduct was legally excusable under the common law necessity defense.

The ALS Hearing Officer rejected White's argument and concluded that "the common law 'necessity' defense is not grounds for challenging [an] administrative license suspension and is not sufficient cause for vacating the suspension." In support of this conclusion, the Hearing Officer noted that the necessity defense is not one of the five enumerated grounds for vacating a license suspension under Idaho Code section 18-8002A(7)(a)-(e). The ALS Hearing Officer also cited an unpublished district court decision, *Hemry v. Idaho Transportation Department*, Adams County Case CV2014-3228 (2014), which rejected a similar argument:

3

Additionally, *Hemry v. ITD*, Adams County Case CV2014-3228, entered September 18, 2014, provides in part that the necessity defense is not available to a petitioner as a defense in an administrative license suspension case as plain language of the statute and interpreting case law limit the grounds available to the petitioner.

White timely petitioned the district court for judicial review of the ALS Hearing Officer's decision sustaining White's suspension. After hearing oral arguments, the district court affirmed the ALS Hearing Officer's decision to sustain White's suspension.

White timely filed a notice of appeal.

## II.  STANDARDS OF REVIEW

"An [ALS] hearing under Idaho Code section 18-8002A results in an 'agency action' and is, therefore, governed by the [Idaho Administrative Procedure Act]." *Wood v. Idaho Transp. Dep't,* 172 Idaho 300, 306, 532 P.3d 404, 410 (2023) (quoting *Reagan v. Idaho Transp. Dep't*, 169 Idaho 689, 693, 502 P.3d 1027, 1031 (2021)). The hearing officer's order is subject to challenge through a petition for judicial review. I.C. § 18-8002A(8). The Idaho Administrative Procedure Act ("APA," Chapter 52, Title 67, Idaho Code) limits the grounds upon which an agency action may be set aside:

> On judicial review, the APA directs that the hearing officer's decision must be affirmed unless the court determines that the officer's "findings, inferences, conclusions, or decisions" are:
> (a) in violation of constitutional or statutory provisions;
> (b) in excess of the statutory authority of the agency;
> (c) made upon unlawful procedure;
> (d) not supported by substantial evidence on the record as a whole; or
> (e) arbitrary, capricious, or an abuse of discretion.

*Wood*, 172 Idaho at 306-07, 532 P.3d at 409-10 (quoting I.C. § 67-5279(3)).

"On appeal, this Court reviews agency decisions directly, independent of the district court's determination." *Wood*, 172 Idaho at 306, 532 P.3d at 409 (quoting *Reagan*, 169 Idaho at 693, 502 P.3d at 1031). The interpretation of a statute is a question of law over which this Court exercises free review. *Williams v. Idaho State Bd. of Real Estate Appraisers*, 157 Idaho 496, 502, 337 P.3d 655, 661 (2014) (quoting *Kimbrough v. Idaho Bd. of Tax Appeals*, 150 Idaho 417, 420, 247 P.3d 644, 647 (2011)). This Court may set aside the agency's decision if it determines the agency erred in a manner specified in Idaho Code section 67-5279(3)(a)-(e) and that "a substantial right of the challenging party has been prejudiced." *Wood*, 172 Idaho at 306, 532 P.3d

4

at 410 (quoting I.C. § 67-5279(4)). "If the agency action is not affirmed, it shall be set aside, in whole or in part, and remanded for further proceedings as necessary." *Id*. (quoting I.C. § 67-5279(3)).

## III.  ANALYSIS

### A. The necessity defense is unavailable to petitioners in ALS proceedings under the plain language of the ALS statute.

White challenges the ALS Hearing Officer's conclusion that the common law defense of necessity is unavailable to petitioners in ALS proceedings. Citing to this Court's decision in *Reagan v. Idaho Transportation Department*, 169 Idaho 689, 502 P.3d 1027 (2021), White contends that the failure to provide for such a defense in an ALS proceeding violates constitutional standards, specifically his right to raise a defense under the Sixth Amendment and his due process rights under the Fourteenth Amendment. In response, ITD argues that the ALS Hearing Officer did not err because: (1) the Idaho Legislature did not include the necessity defense among the five enumerated grounds for vacating an automatic driver's license suspension under Idaho Code section 18-8002A(7)(a)-(e); and (2) the necessity defense is a common law defense, not a constitutional defense. ITD further argues that *Reagan* is distinguishable from this case because *Reagan* did not hold that a hearing officer may vacate an administrative license suspension based on a necessity defense, nor did it hold that the necessity defense is a constitutional defense or issue. Instead, ITD contends *Reagan* is limited to the holding that evidence gathered incident to an unlawful arrest violated Fourth Amendment constitutional standards in an ALS proceeding.

For the reasons set forth below, we conclude that the ALS Hearing Officer did not err in concluding that the necessity defense is unavailable to petitioners in ALS proceedings. Therefore, we affirm the district court's decision to reject White's challenge.

Necessity is a recognized common law defense in Idaho. *State v. Hastings*, 118 Idaho 854, 856, 801 P.2d 563, 565 (1990); *State v. Beavers*, 152 Idaho 180, 183, 268 P.3d 1, 4 (Ct. App. 2010). "The basic premise behind the necessity defense is that a person who is compelled to commit an illegal act in order to prevent a greater harm should not be punished for that act." *Hastings*, 118 Idaho at 855, 801 P.2d at 564. The necessity defense requires the following four elements: (1) "[a] specific threat of immediate harm;" (2) "[t]he circumstances which necessitate the illegal act must not have been brought about by the defendant;" (3) "[t]he same objective

5

could not have been accomplished by a less offensive alternative available to the actor;" and (4) "[t]he harm caused was not disproportionate to the harm avoided." *Id.*

Traditionally, the states have been "accorded great leeway in adopting summary procedures to protect public health and safety." *Mackey v. Montrym*, 443 U.S. 1, 17 (1979). "A suspension of driving privileges pursuant to [Idaho Code section] 18-8002A is a civil penalty separate and apart from any other suspension imposed for a violation of other Idaho motor vehicle codes or for a conviction of an offense." *In re Bowman*, 135 Idaho 843, 845, 25 P.3d 866, 868 (Ct. App. 2001) (citing I.C. § 18-8002(5)). The ALS statute, Idaho Code section 18-8002A, requires that ITD summarily suspend the driver's license of a driver who fails an evidentiary test administered by a law enforcement officer for concentration of alcohol or other intoxicating substances pursuant to Idaho Code section 18-8004. I.C. § 18-8002A(4). During an ALS hearing challenging the suspension, the burden of proof rests on the driver raising the challenge. I.C. § 18-8002A(7). The hearing officer "shall not vacate the suspension" unless the driver has shown, by a preponderance of the evidence, one of the following:

> (a) The peace officer did not have legal cause to stop the person; or
> (b) The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section [sic] 18-8004, 18-8004C or 18-8006, Idaho Code; or
> (c) The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section [sic] 18-8004, 18-8004C or 18-8006, Idaho Code; or
> (d) The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18-8004(4), Idaho Code, or the testing equipment was not functioning properly when the test was administered; or
> (e) The person was not informed of the consequences of submitting to evidentiary testing as required in subsection (2) of this section.

I.C. § 18-8002A(7).

As noted, the plain language of Idaho Code section 18-8002A(7) provides five grounds upon which an ALS hearing officer can vacate an administrative license suspension if the person challenging the suspension has proven one of the grounds by a preponderance of the evidence. I.C. § 18-8002A(7)(a)-(e). The necessity defense is not one of the grounds enumerated in the statute. Therefore, by the plain language of the statute, an ALS hearing officer cannot vacate an administrative license suspension based upon a necessity defense.

While not binding upon this Court, our sister states have consistently held that the necessity defense is not available to petitioners in ALS proceedings, based on the plain language and legislative purpose of their ALS statutes. For example, in *State v. Pollander*, 706 A.2d 1359, 1363 (Vt. 1997), the Vermont Supreme Court noted that Vermont's recognition of the necessity defense "emanates not from any state or federal constitutional imperative but rather from the common law," which leaves its legislature "free to determine whether a necessity defense is an issue to be considered in a civil suspension hearing." (Citations omitted). Therefore, the court concluded that it "may consider whether to permit a necessity defense in the civil suspension setting *only if the Legislature has left the issue unresolved*." *Id.* (emphasis added) (citation omitted). The court held that the plain language of the statute indicated the Vermont Legislature's intent to limit the issues that may be presented at a civil suspension hearing to those enumerated in the statute. *Id.* The court further held that the purpose of the state's ALS statute was to serve "the legitimate purpose of protecting public safety by quickly removing 'potentially dangerous drivers from the road'" and minimizing procedural delay, which was served by excluding the necessity defense and other affirmative defenses from among the issues to be litigated. *Id.* (quoting *State v. Strong*, 605 A.2d 510, 513 (Vt. 1992)).

Similarly, in *Foster v. Snyder*, 76 Cal. App. 4th 264, 270 (Cal. Ct. App. 1999), a California court of appeals considered the language and legislative history of its "implied consent" statute, an analog to Idaho's ALS statute, finding it to be "remedial in nature," "aimed at reducing the hazards of drunken driving" on the state highways, and "designed to secure the *civil* cooperation of all persons privileged to drive." (Emphasis in original) (citations omitted). The court reasoned that "[a] court should not read into a remedial statute an exception that would impose obstacles to the achievements of its purposes" and held that duress and necessity defenses are inapplicable in administrative civil suspension proceedings. *Id.* at 270, 273 (citations omitted).

The approach of our sister states is instructive, especially considering this Court has recognized ALS proceedings fulfill a different statutory purpose than criminal DUI proceedings. In *State v. Talavera*, 127 Idaho 700, 705, 905 P.2d 633, 638 (1995), this Court explained that the stated purpose of Idaho Code section 18-8002A is to provide "safety for all persons using the highways of this state by quickly revoking the driving privileges of those persons who have shown themselves to be safety hazards by driving with a blood alcohol content which exceeds

the legal limit provided for in [s]ection 18-8004, Idaho Code." (Quoting Statement of Purpose, H.B. 252, 1993 Leg., Reg. Sess. (Idaho 1993)). We continued, stating that ALS proceedings accomplish the statute's objective "by expediting the removal of drivers who fail the BAC evidentiary test from the public roads, thus avoiding the often time-consuming delays inherent in criminal prosecutions." *Talavera*, 127 Idaho at 706, 905 P.2d at 638 (citing *State v. Savard*, 659 A.2d 1265, 1267-68 (Me. 1995)).

White contends that this Court's holding in *Reagan v. Idaho Transportation Department*, 169 Idaho 689, 502 P.3d 1027 (2021), expanded the statutory grounds for vacating an administrative license suspension to include consideration of the Fourth Amendment exclusionary rule, a "constitutional standard." Specifically, he argues that the necessity defense is rooted in the constitutional right to present a defense stemming from the Sixth Amendment's Compulsory Process or Confrontation Clause and the Fourteenth Amendment's Due Process Clause and, therefore, after *Reagan*, the necessity defense should also be considered in ALS proceedings. White's reliance on *Reagan* is misplaced.

In *Reagan,* a police officer responded to Reagan's residence, acting on a citizen's report of a potentially intoxicated driver operating a vehicle registered to Reagan. *Reagan*, 169 Idaho at 692, 502 P.3d at 1030. The officer did not himself witness Reagan operating or otherwise in control of a vehicle. *Id.* Reagan admitted to consuming alcohol, failed several field sobriety tests, and the officer arrested her for DUI, placing her in handcuffs in the back of a patrol car. *Id*. The officer played a recording of the ALS notice before administering a breathalyzer test, the results of which indicated Reagan's BAC exceeded the legal limit. *Id*. at 692-93, 502 P.3d at 1030-31. Reagan's driver's license was suspended for one year under Idaho Code section 18-8002A. *Id*.

Reagan appealed to the district court, which reversed Reagan's suspension, holding, in part, that Reagan's arrest was unlawful. *Reagan*, 169 Idaho at 693, 502 P.3d at 1031. ITD subsequently appealed. *Id*. at 692, 502 P.3d at 1030. This Court held that the district court correctly vacated Reagan's suspension because Reagan's arrest violated the United States and Idaho Constitutions and, therefore, the breathalyzer results obtained incident to the unlawful arrest violated constitutional standards. *Id*. at 698, 700, 502 P.3d at 1036, 1038. Thus, this Court concluded that the breathalyzer results could not be used to form the basis of Reagan's administrative license suspension and the district court correctly vacated the suspension. *Id.*

8

The facts in *Reagan* are distinguishable from White's appeal, and *Reagan* does not expand the grounds for vacating an administrative license suspension as White suggests. *Reagan* did not hold that all common law defenses or criminal defenses are grounds for vacating an administrative license suspension. Instead, this Court explained in *Reagan* that, "[e]ven though an ALS hearing is an administrative proceeding *to which the Fourth Amendment is not directly applicable*, the purpose of an ALS hearing is to *evaluate the evidence of BAC obtained as part of a criminal detention or seizure*." *Id.* at 689, 699, 502 P.3d at 1037 (emphasis added). "Therefore," this Court held, "any search by which BAC evidence is obtained for purposes of the ALS must satisfy constitutional standards." *Id.* Unlike in *Reagan*, no issue concerning the lawfulness of the search, meaning the evidentiary test results, has been raised in this appeal. The necessity defense was not at issue in *Reagan*, and we did not hold that the necessity defense is a constitutionally protected interest of petitioners in ALS proceedings. *Reagan* did not expand the grounds for vacating an administrative license suspension to include all criminal common law defenses. Thus, we agree with the district court that *Reagan* is not dispositive in this appeal, which is fatal to White's appeal.

Intertwined with White's reliance on *Reagan* is his assertion that the right to present a necessity defense in an ALS proceeding stems from the Sixth and Fourteenth Amendments. Because *Reagan* addressed the issue of a Fourth Amendment constitutional violation as grounds for vacating a suspension, White argues his Sixth Amendment right to counsel and Fourteenth Amendment due process rights were violated, such that his suspension should be vacated.

White contends that his Sixth Amendment "constitutional right to present a defense" should have permitted him to "avail himself" of the necessity defense in the ALS hearing. However, he provides no further authority to suggest that the common law necessity defense is grounded in constitutional imperatives. Furthermore, by its plain language, the Sixth Amendment applies to "criminal prosecutions," not civil proceedings. U.S. CONST. amend. VI. Indeed, in White's description of the necessity defense and its elements, he cites exclusively to criminal opinions of the Idaho Supreme Court and Court of Appeals and to the Idaho Criminal Jury Instructions. He provides no legal authority to support his argument that the Sixth Amendment right to present a defense includes a right to present a necessity defense in a civil ALS hearing.

We have previously considered Sixth Amendment challenges to ALS hearing decisions concerning a petitioner's right to counsel before deciding whether to submit to or refuse a law

9

enforcement request for evidentiary testing for alcohol concentration under Idaho Code section 18-8002A and its predecessors. *E.g. State v. Ankney,* 109 Idaho 1, 5-6, 704 P.2d 333, 337-38 (1985) (holding, under Idaho Code section 49-352, a precursor to Idaho Code section 18-8002, that "a person does not have a constitutional right to consult with an attorney before deciding whether to submit to an evidentiary test for alcohol concentration"); *Mills v. Bridges*, 93 Idaho 679, 682, 471 P.2d 66, 69 (1970) (citations omitted) (stating, under Idaho Code section 49-352, that drivers do not have a constitutional right to consult with an attorney before deciding whether to accede to evidentiary tests for alcohol concentration "because an administrative proceeding for the suspension of a driver's license is a civil proceeding, and not a criminal prosecution . . . ."). This Court has refused to apply the Sixth Amendment right to counsel in those circumstances because such tests are civil in nature, rather than criminal. *Id.* Sixth Amendment rights expressly apply to criminal prosecutions. U.S. CONST. amend. VI. Even if White had been able to adequately support his argument that the ability to present a necessity defense is a Sixth Amendment constitutional interest, it would not inevitably follow that petitioners have a right to raise necessity defenses in ALS proceedings. Just as the Sixth Amendment right to counsel is restricted in ALS proceedings, so too is the Sixth Amendment right to raise a defense restricted by the legislature explicitly providing the grounds for vacating an administrative license suspension, none of which include an affirmative necessity defense.

Finally, White asserts that his "constitutional right to present a defense" is rooted in the Fourteenth Amendment Due Process Clause. White argues that not being able to "avail himself" of the necessity defense during the ALS hearing was a violation of Fourteenth Amendment constitutional standards. We assume, although White does not expressly articulate, that his argument raises an issue of procedural due process, rather than substantive due process. In procedural due process challenges, we must determine the adequacy of a particular process by balancing three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute requirements would entail." *Neighbors for a Healthy Gold Fork v. Valley Cnty.,* 145 Idaho 121, 127, 176 P.3d 126, 132 (2007) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)).

Addressing the first and second factors, the private interest at stake is, of course, White's driving privileges. "It is well recognized that an individual's interest in a driver's license is substantial." *Ankney*, 109 Idaho at 4, 704 P.2d at 336 (citing *Mackey*, 443 U.S. at 11). However, the risk of erroneous deprivation of White's driving privileges after the ALS hearing was low. Pursuant to the Idaho APA and the ALS statute, White was granted an ALS hearing where he was given the opportunity to testify and present his necessity defense. He was afforded the opportunity to present his necessity defense again on judicial review before the district court and in the present appeal. Both the ALS Hearing Officer and the district court heard White's necessity defense but rejected his arguments primarily on statutory grounds. Considering White's opportunities to be heard at the ALS hearing and on judicial review, the risk of erroneous deprivation of his driving privileges was minimal. In fact, part of the Idaho Legislature's stated purpose in enacting Idaho Code section 18-8002A was "*[t]o guard against the potential for an erroneous deprivation of the driving privilege* by providing for an administrative hearing on the revocation, if requested, within seven days of service of the notice of suspension." Statement of Purpose, H.B. 252, 1993 Leg., Reg. Sess. (Idaho 1993) (emphasis added). The probable value of requiring ALS hearing officers to vacate suspensions based on necessity defenses would be negated by the direct conflict with the ALS statute's plain meaning and legislative intent to "quickly revok[e] the driving privileges of those persons who have shown themselves to be [public] safety hazards." Statement of Purpose, H.B. 252.

Addressing the third factor above, the government's interest includes (1) setting forth conditions on driving privileges that will prevent intoxicated persons from driving, and (2) defining any exceptions that would excuse a driver's violation of those conditions. "As acknowledged by the [United States] Supreme Court, 'the interest of the states in depriving the drunk driver of permission to continue operating an automobile is particularly strong.' " *Ankney*, 109 Idaho at 4, 704 P.2d at 336 (quoting *Illinois v. Batchelder*, 463 U.S. 1112, 1118 (1983)). In balancing the private interest at stake with the government's interest, this Court held in *Ankney* that, "[a]lthough an individual does have a substantial right in his driver's license, the state's interest in preventing intoxicated persons from driving *far outweighs* the individual's interest," especially because the individual is entitled to a prompt post-seizure hearing. *Id.* at 5, 704 P.2d at 337 (emphasis added). Likewise, while White has a recognized private interest in maintaining his

11

driving privileges, the government's interest in preventing intoxicated individuals from driving far outweighs White's private interest.

For these reasons, we conclude that the ALS Hearing Officer did not violate White's due process rights by determining that the necessity defense was an invalid basis for vacating an administrative license suspension. Therefore, we hold that the district court was correct in affirming the ALS Hearing Officer's decision under Idaho Code section 67-5279(3) because White's argument under *Reagan*, predicated on the Sixth and Fourteenth Amendments, failed to show that the ALS Hearing Officer's "findings, inferences, conclusions, or decisions" were "in violation of constitutional or statutory provisions."

## B. ITD is not entitled to attorney fees on appeal under Idaho Code section 12-121.

ITD requests attorney fees under Idaho Code section 12-121. Section 12-121 permits the court to award reasonable attorney fees to the prevailing party where "the case was brought, pursued or defended frivolously, unreasonably or without foundation." ITD contends that White's argument is made "without foundation or legal authority" because neither the "plain reading of the ALS statute, nor *Reagan*, allow the ALS Hearing Officer to address a necessity defense."

While White's arguments have been unsuccessful, it does not inevitably follow that his appeal was filed frivolously, unreasonably, or without foundation. *See Floyd v. Board of Ada Cnty. Commissioners*, 164 Idaho 659, 668, 434 P.3d 1265, 1274 (2019) (holding that although a party's arguments proved unsuccessful, their appeal was not filed frivolously, unreasonably, or without foundation because it raised novel arguments and constitutional challenges to a provision of Idaho Code). The issue on appeal, whether the necessity defense is available to petitioners in ALS proceedings, is an issue of first impression for this Court. We have held that "attorney fees may not be awarded under Idaho Code section 12-121 when the case involves an issue of first impression." *Abell v. Abell*, 172 Idaho 531, 547, 534 P.3d 957, 973 (2023) (quoting *Erickson v. Erickson*, 171 Idaho 352, 371, 521 P.3d 1089, 1108 (2022)). Therefore, we decline to award ITD attorney fees for this appeal under Idaho Code section 12-121. ITD is entitled to costs on appeal as a matter of right pursuant to Idaho Appellate Rule 40(a).

## IV. CONCLUSION

12

For the foregoing reasons, we affirm the district court's decision on judicial review that affirmed the ALS Hearing Officer's order to sustain White's administrative license suspension. ITD is not entitled to an award of attorney fees under Idaho Code section 12-121. ITD is entitled to costs on appeal as a matter of right pursuant to Idaho Appellate Rule 40(a).

Chief Justice BEVAN, Justices MOELLER and MEYER, and Justice Pro Tem JUDGE CONCUR.