# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41193

TIMOTHY WILLIAMS, an individual, )
    Petitioner-Appellant-Cross Respondent, )
v. )
IDAHO STATE BOARD OF REAL ESTATE )
APPRAISERS, a department within the State )
of Idaho, )
    Respondent-Cross Appellant. )
)

**Boise, August 2014 Term**

**2014 Opinion No. 116**

**Filed: October 29, 2014**

**Stephen W. Kenyon, Clerk**

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge.

The decision of the district court is <u>affirmed.</u>

Jones Gledhill Fuhrman Gourley, P.A., Boise, for appellant. Kimbell D. Gourley argued.

Naylor & Hales, P.C., Boise, for respondent. Bruce J. Castleton argued.

_____

J. JONES, Justice

Idaho's Bureau of Occupational Licenses (Bureau) investigated and initiated disciplinary proceedings against Williams after it received complaints that he had engaged in various forms of professional misconduct as a licensed real estate appraiser. Ultimately, Idaho's Board of Real Estate Appraisers (Board) revoked Williams' license, imposed $4,000 in fines, and required Williams to pay the Board's attorney fees and costs. The district court, acting in an appellate capacity, affirmed the Board's decision to revoke Williams' license and to impose fines, but reversed the Board's order that Williams pay its attorney fees and costs. Williams appeals and the Board cross-appeals.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

Timothy Williams was a licensed real estate appraiser who became the subject of a Bureau investigation and Board disciplinary proceeding.

In 1990, the legislature enacted the Idaho Real Estate Appraisers Act,

1

Idaho Code §§ 54–4101 to 54–4119. When doing so, it created the Real Estate Appraiser Board (Board) to administer the Act's provisions. Idaho Code § 54–4106(1). The Act empowered the Board to investigate the actions of any state certified real estate appraiser and to suspend or revoke the appraiser's certification for specified reasons. Idaho Code § 54–4107(1). The Act also granted the Board the power to "authorize, by written agreement, the bureau of occupational licenses to act as its agent in its interest." Idaho Code § 54–4106(2)(a). Pursuant to that authority, on October 18, 2004, the Board entered into a written agreement with the Bureau of Occupational Licenses (Bureau). That agreement included a provision stating that the Bureau "shall conduct investigations of complaints within the Board's authority."

*Williams v. State, Bd. of Real Estate Appraisers*, 149 Idaho 675, 676, 239 P.3d 780, 781 (2010).

In January 2005, the Bureau received a letter written by Brad Janoush,[1] also a real estate appraiser, which alleged that Williams had engaged in professional misconduct. Specifically, Janoush wrote that in mid-2004, he and other members of his appraisal firm, Knipe Janoush Knipe, LLC,

were made aware that the security of our computer bid system[2] had been compromised. We investigated the situation and found that this was true. Based on the information discovered, it is our understanding that Tim Williams, MAI had gained access to our requests for proposals from Wells Fargo Bank and possibly others. With this ability he scrutinized our bids and then was able to use this information to under-bid our bids. It is our understanding that this happened on numerous occasions.

In September 2006, another appraiser—Tony Orman—filed a complaint with the Bureau alleging that Williams signed a misleading appraisal report regarding a property in Donnelly, Idaho. As a result of these allegations, the Bureau launched an investigation against Williams. After conducting its investigations, the Bureau concluded Williams had engaged in conduct that violated Idaho statutes and professional rules of conduct.

In November 2007, the Bureau initiated disciplinary proceedings against Williams by filing a formal complaint with the Board, and the matter was submitted to a hearing officer for a contested case proceeding.

Williams moved to dismiss those allegations in the complaint that arose from the investigation prompted by the letter. . . . At the time the investigation was commenced, the Act provided that the Board "shall upon a written sworn complaint or may upon its own motion investigate the actions of any state certified real estate appraiser." Ch. 82, § 1, 1990 Idaho Sess. Laws 164, 168 (current version at Idaho Code § 54–4107(1)). Williams contended that any

---

[1] Janoush was not at this time a member of the Board but did become a member of the Board in December 2008.
[2] Janoush's reference is to the on-line bidding system, named RETECHS, that Wells Fargo Bank used to receive bids from Idaho appraisers on available jobs.

counts based upon an investigation that was not prompted by either a sworn complaint or a formal motion and vote by the Board must be dismissed. The Board's hearing officer recommended that the motion to dismiss be denied. The Board issued an order adopting that recommendation and stating that it was a final order.

On November 21, 2008, Williams filed a petition for judicial review asking the district court to dismiss with prejudice all claims alleged against him by the Board on the ground that the investigation into his alleged misconduct had not been initiated according to law. The district court held that the Board had properly delegated to the Bureau the discretion to initiate investigations. It affirmed the denial of Williams's motion to dismiss, and he then timely appealed to this Court.

*Williams*, 149 Idaho at 676–77, 239 P.3d at 781–82. The Court held the matter was not ripe because the Board had not issued a final order and the Board lacked authority to certify an interlocutory order for appeal. *Id.* at 679, 239 P.3d at 784.

After remand, in March 2011, the Bureau filed an Amended Complaint, alleging nine counts of wrongful conduct by Williams, which are summarized below:

1. Williams allegedly violated Idaho Code section 54-4107(1)(c) by accessing the Wells Fargo RETECHS system through the user names and passwords of his competitors.

2. Williams allegedly violated Idaho Code section 54-4107(1)(c) by certifying he had personally inspected twelve properties but had actually not conducted personal inspections of the properties.

3. Williams allegedly violated Idaho Code sections 54-4107(1)(c) and (e) and USPAP[3] (2001) Rules 1-1(c), 2-1(a), and 2-3 by certifying he had personally inspected four properties but had actually not conducted personal inspections of the properties.

4. Williams allegedly violated Idaho Code sections 54-4107(1)(c) and (e) and USPAP (2002) Rules 1-1(c), 2-1(a), and 2-3 by certifying he had personally inspected twenty properties but had actually not conducted personal inspections of the properties.

5. Williams allegedly violated Idaho Code sections 54-4107(1)(c) and (e) and USPAP (2003) Rules 1-1(c), 2-1(a), and 2-3 by certifying he had personally inspected one property but had actually not conducted a personal inspection of the property.

6. Williams allegedly violated Idaho Code sections 54-4107(1)(d) and 54-

---

[3] USPAP stands for the Uniform Standards of Professional Appraisal Practice of the Appraisal Foundation, which have been incorporated by reference into the Board's rules. IDAPA 24.18.01.004. The record does not contain a copy of any USPAP rule.

3

4109(3) by failing to make certain appraisal files and supporting data available to the Bureau for inspection and copying.

7. Williams allegedly violated Idaho Code sections 54-4107(1)(d) and 54-4109(3), and the USPAP (2002) Recordkeeping rule by failing to make certain appraisal files and supporting data available to the Bureau for inspection and copying.

8. Williams allegedly violated Idaho Code sections 54-4107(1)(d) and (e); IDAPA 24.18.01.700; and USPAP (2005) Rules 1-1(b), 1-2(e)(i), 1-3(a), 1-4(a), 1-4(e), 1-5(a), 2-1(a), and 2-1(b) when he signed a misleading appraisal report.

The Board agreed to dismiss Count Nine of the Amended Complaint prior to the hearing.

Hearing officer David E. Wynkoop held a four-day evidentiary hearing in August 2011 for the purpose of making a recommendation to the Board as to whether Williams' conduct violated Idaho law as alleged in the Amended Complaint. After the hearing, the Hearing Officer issued his Findings of Fact, Conclusions of Law, and Proposed Order. The Board adopted the Hearing Officer's findings in their entirety and on February 27, 2012, entered its Final Order. In addition to explicitly adopting by reference the Hearing Officer's findings, the Board in its Final Order re-stated the conclusions of law reached by the Hearing Officer.

Citing its authority under Idaho Code sections 54-4107 and 67-2609(a)(6) & (7) and IDAPA 24.18.01.525, the Board revoked Williams' license, imposed $4,000 in fines, and ordered Williams to pay the costs and fees associated with the investigation and prosecution, including the Board's attorney fees. Williams appealed to the district court from the Board's final order. The district court affirmed the Board's decision, except for vacating the part of the Board's sanction of Williams that required him to pay the Board's attorney fees. Williams then appealed from the district court's order, and the Board filed a cross-appeal.

## II.
## ISSUES CONSIDERED ON APPEAL[4]

1. Whether the investigation into Williams' conduct was improperly initiated.

2. Whether Williams' due process rights were violated because the Board was biased and the statute under which he was disciplined was void for vagueness.

3. Whether there was sufficient evidence to support the Board's decision.

4. Whether the Board abused its discretion when it revoked Williams' license and

---

[4] Williams asserted several other issues in his opening brief. However, since they were not supported by cogent argument or authority, we do not consider them. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010).

imposed $4,000 in fines.

5. Whether the Board had authority to recover the fees and costs it incurred in the investigation and prosecution of Williams.

6. Whether either party is entitled to attorney fees on appeal.

## III.
## STANDARD OF REVIEW

"The Board is an 'agency' under the Idaho Administrative Procedure Act." *Williams*, 149 Idaho at 677, 239 P.3d at 782 (citing I.C. § 67-5201(2)). "A strong presumption of validity favors an agency's actions." *Cooper v. Bd. of Prof'l Discipline of Idaho State Bd. of Med.*, 134 Idaho 449, 454, 4 P.3d 561, 566 (2000). Judicial review of agency action is governed by the IDAPA. I.C. § 67-5270(1). When, as is the case here, an agency is required to issue an order,[5]

> the court shall affirm the agency action unless the court finds that the agency's findings, inferences, conclusions, or decisions are:
> a. in violation of constitutional or statutory provisions;
> b. in excess of the statutory authority of the agency;
> c. made upon unlawful procedure;
> d. not supported by substantial evidence on the record as a whole; or
> e. arbitrary, capricious, or an abuse of discretion.

I.C. § 67-5279(3). Notwithstanding the provisions of Idaho Code section 67-5279(3), "agency action shall be affirmed unless substantial rights of the appellant have been prejudiced." I.C. § 67-5279(4). Therefore, the party attacking an agency decision "must first illustrate that the [agency] erred in a manner specified in Idaho Code § 67-5279(3), and then that a substantial right of [the party] has been prejudiced." *Price v. Payette Cnty. Bd. of Cnty. Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998).

"An agency's findings of fact will stand if supported by substantial and competent, although conflicting, evidence in the record." *Jasso v. Camas Cnty.*, 151 Idaho 790, 793, 264 P.3d 897, 900 (2011). As to review of discretionary issues, "an appellate court reviewing agency actions under the [IDAPA] must determine whether the agency perceived the issue in question as discretionary, acted within the outer limits of its discretion and consistently with the legal standards applicable to the available choices, and reached its own decision through an exercise of reason." *Haw v. Idaho State Bd. of Med.*, 143 Idaho 51, 54, 137 P.3d 438, 441 (2006). The

---

[5] An agency may not revoke a license without providing an opportunity for a contested case. I.C. § 67-5254(1). A contested case is "a proceeding which results in the issuance of an order." I.C. § 67-5201(6).

"Court exercises free review over questions of law." *Neighbors for a Healthy Gold Fork v. Valley Cnty.*, 145 Idaho 121, 127, 176 P.3d 126, 132 (2007). "The interpretation of a statute is a question of law subject to free review." *Kimbrough v. Idaho Bd. of Tax Appeals*, 150 Idaho 417, 420, 247 P.3d 644, 647 (2011). "As this is an appeal from a district court's decision, we review the district court's decision as a matter of procedure." *Jasso*, 151 Idaho at 793, 264 P.3d at 900.

**IV.**
**ANALYSIS**

Although Williams lists twenty issues on appeal, they are more properly grouped into four arguments for reversal of the Board's decision: first, the proceedings against him were initiated in violation of law; second, his due process rights were violated because the Board was biased and the statutes under which he was sanctioned are unconstitutionally vague; third, there was insufficient evidence to support the Board's decision; and fourth, the Board abused its discretion in imposing sanctions against him. To understand Williams' claims, it is necessary to establish the legal framework under which the Board operates. The Board is a part of Idaho's Department of Self Governing Agencies. I.C. § 67-2601(2)(b). An "agency" is a "state board, commission, department or officer authorized by law to make rules or to determine contested cases. . . ." I.C. § 67-5201(2). "Therefore, an agency is a state entity empowered to affect an individual's legal rights or duties." *Petersen v. Franklin Cnty.*, 130 Idaho 176, 182, 938 P.2d 1214, 1220 (1997) (quoting Michael S. Gilmore & Dale D. Goble, *The Idaho Administrative Procedure Act: A Primer for the Practitioner*, 30 IDAHO L.REV. 273, 282 (1993)).

Under the Idaho Real Estate Appraisers Act (Act), in order to hold oneself out as a state licensed real estate appraiser, one must first obtain a license or certification from the Idaho Real Estate Appraisers Board. I.C. § 54-4103. The Board administers the Act's provisions and is authorized to investigate suspected violations and revoke licenses and certificates for specified reasons. I.C. §§ 54-4106(2)(c) and 4107(1). Under Idaho Code section 67-2602(1), the Board may enter into a written contract with the Bureau of Occupational Licenses so that the Bureau, also a self-governing agency, may provide the Board with services.[6] I.C. § 67-2602(1) ("The bureau of occupational licenses . . . shall be empowered, by written agreement between the bureau and each agency for which it provides administrative or other services as provided by law, to provide such services for the . . . real estate appraiser board . . . ."). The Act also empowers the Board to

---

[6] Although Williams claims the Bureau is not an administrative agency, Idaho Code section 67-2601(3) provides that "[t]he bureau of occupational licenses is hereby created within the department of self-governing agencies."

6

"authorize, by written agreement, the bureau of occupational licenses to act as its agent in its interest[.]" I.C. § 54-4106(2)(a). Idaho Code section 67-2604 provides certain terms and conditions to be included in written agreements between the Bureau and administrative agencies. Idaho Code section 67-2609(a)(5) empowers the Bureau to "conduct hearings on proceedings to revoke or refuse renewal of licenses, certificates or authorities of persons exercising the respective professions, trades or occupations, and to revoke or refuse to renew such licenses, certificates or authorities."

Pursuant to this statutory authority, the Board entered into a written agreement (the Agreement) with the Bureau, authorizing the Bureau to act as its agent to conduct investigations on its behalf. The Agreement provided:

> the [Bureau] shall receive complaints against licensees and . . . shall refer those that are within [the Board's regulatory] authority for investigation by the [Bureau]. . . . The [Bureau] shall conduct investigations of complaints within the Board's authority. . . . The [Bureau] shall report the results of investigations to the Board or its designee to determine if further action is appropriate.

The Agreement went into effect in 2004 and was renewed in 2007.

## A. The Bureau properly initiated its investigation of Williams.

Williams contends the Amended Complaint was improperly filed because the investigation upon which it was founded was procedurally void under Idaho Code section 54-4107. The Bureau launched its investigation after receiving Janoush's letter and Orman's complaint form. Williams claims the letter and the form did not meet the requirements necessary to allow for an investigation to commence.

Under Idaho Code section 54-4106(2)(c), the Board has authority to "conduct investigations into violations of the provisions" of the Act. When the Bureau filed its first complaint with the Board in 2007, Idaho Code section 54-4107(1) provided that "the board shall upon a written sworn complaint *or may upon its own motion* investigate the actions of any state licensed or certified real estate appraiser and may suspend or revoke any license or certificate issued under this chapter for" a number of enumerated actions. (Emphasis added). In 2008, Idaho Code section 54-4107(1) was amended,[7] and the introductory phrase relating to investigations was deleted so that Idaho Code section 54-4107(1) now simply provides that "[t]he board may refuse to issue, refuse to renew or may suspend, revoke or otherwise sanction any license or certificate

---

[7] 2008 Idaho Sess. Laws, ch. 108, § 1, p. 306.

7

issued under the chapter for" a number of enumerated actions.

Williams contends that neither of the complaints complied with the statute. He asserts that neither of the complaints was properly sworn and that there is no evidence that the Board adopted a motion to investigate his actions. Therefore, he contends that the investigation was not properly initiated, constituting a fatal flaw in the disciplinary proceeding.

The Board argues that the pre-2008 version of the statute "required" it to launch an investigation if it received a written sworn complaint but gave it discretion to choose to initiate investigations in other circumstances. It further argues that, through statutory authority and the Agreement, the Board has granted the Bureau the ability to receive complaints, exercise discretion to decide to investigate appraisers, and conduct investigations on its behalf. In essence, the Board interprets "upon its own motion" to mean "upon its own initiative" and contends this interpretation is reasonable and should be given deference by the Court, citing the four-prong test in *J.R. Simplot Co., Inc. v. Idaho State Tax Comm'n*, 120 Idaho 849, 862, 820 P.2d 1206, 1219 (1991).

We need not negotiate the shoals of *Simplot* in order to divine the meaning of the statute. The Board's reading of the "upon its own motion" language is reasonable and correct. First, it is consistent with the Board's general power under Idaho Code section 54-4106(2)(c) to "conduct investigations into violations" of the Act. Second, in other statutes pertaining to courts or administrative agencies, the Legislature has interchangeably employed "upon its own initiative" and "upon its own motion." For example, Idaho Code section 20-508(2) provides for waiver of Juvenile Corrections Act jurisdiction upon motion by a prosecuting attorney "or by motion of the court upon its own initiative." In *Idaho Power v. Idaho Pub. Util. Comm'n*, 134 Idaho 285, 289, 1 P.3d 786, 790 (2000), we considered Idaho Code section 61-622, which provided the Idaho Public Utilities Commission the power "either upon complaint or upon its own initiative" to conduct a hearing on power rates, and Idaho Code section 61-502, which empowered the Commission to consider certain power rate issues "after a hearing had upon its own motion or upon complaint." We said, "a careful reading of the statutes governing its operation indicate that the Commission has the authority to conduct a hearing to determine the propriety of any rate, fare, rule or regulation . . . ." *Id.* We did not draw a distinction between Commission actions taken on its initiative or upon its motion, or require that some sort of formal motion be made or filed. This Court has frequently adopted rules allowing courts to act upon their own motion and certainly never contemplated the court filing a motion with itself before doing so. *See, e.g.*,

8

I.C.R. 48(a) ("the court . . . may dismiss a criminal action upon its own motion . . ."); I.R.C.P. 84(e)(1) ("the district court may order the taking of additional evidence upon its own motion . . . .").

When authorizing the Board to investigate upon its own motion, the Legislature was essentially recognizing the Board's authority to act upon its own volition or initiative. This conclusion is further supported by the Legislature's empowerment of the Board, as well as other administrative agencies, to contract with the Bureau to perform investigations and conduct hearings on disciplinary matters. In light of the statutorily authorized delegation, it is highly unlikely that the Legislature contemplated that the Board would have to adopt a formal motion before the Bureau could undertake an investigation. Here, the Board, acting as a body, approved the Agreement with the Bureau, delegating to the Bureau the statutory authority to receive, review, and investigate written complaints. Among other things, the Agreement requires the Bureau to report to the Board at its regularly scheduled meetings the number of complaints received, closed, investigated, under investigation, and referred for legal review. The Agreement does not require a Board motion to initiate an investigation and the statutes do not require adoption of a formal motion. Williams' contention that the investigation against him was improperly initiated is simply without merit.

## B. Williams' due process rights were not violated.

Williams contends the proceedings against him violated his due process rights, arguing that the Board was biased and that the statutory provisions under which he was disciplined—Idaho Code sections 54-4107(1)(c), (d), and (e)—are unconstitutionally vague. The Board counters that Janoush—who wrote the initial complaint letter and then later joined the Board—neither participated in the discussion nor voted on the outcome memorialized by the Final Order in this case. The Board also argues that Williams was afforded due process because the statutes and rules of the Board, through their ordinary meaning and by the express declaration of standards of conduct, were sufficiently definite to adequately notify him of the professional standards to which he would be held and the conduct that would subject him to discipline. "Due process issues are generally questions of law, and this Court exercises free review over questions of law." *Gold Fork*, 145 Idaho at 127, 176 P.3d at 132.

Due process is implicated in this case because the discipline imposed by the Board revoked Williams' appraiser license, and this revocation deprives him of his chosen livelihood.

*H & V Eng'g, Inc. v. Idaho State Bd. of Prof'l Eng'rs & Land Surveyors*, 113 Idaho 646, 649, 747 P.2d 55, 58 (1987). "The right to practice a chosen profession is a valuable property right which cannot be deprived unless one is provided with the safeguards of due process." *Id.* The United States Constitution provides that a state may not "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV. The Idaho Constitution guarantees substantially the same protections for due process of law. *Rudd v. Rudd*, 105 Idaho 112, 115, 666 P.2d 639, 642 (1983). "No person shall be . . . deprived of life, liberty or property without due process of law." Idaho Const. art. 1, § 13. As a state agency, the Board is subject to these due process requirements. *See Gold Fork*, 145 Idaho at 127, 176 P.3d at 132.

> For all its consequence, "due process" has never been, and perhaps can never be, precisely defined. "[U]nlike some legal rules," this Court has said, due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895. Rather, the phrase expresses the requirement of "fundamental fairness," a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what "fundamental fairness" consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.

*Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N. C.*, 452 U.S. 18, 24–25 (1981).

The Due Process Clause provides "two distinct guarantees: substantive due process and procedural due process." *Nelson v. Hayden*, 138 Idaho 619, 622, 67 P.3d 98, 101 (Ct. App. 2003) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Williams' claim regarding the Board's alleged bias goes to procedural due process and his claim regarding statutory vagueness goes to substantive due process. We will address these claims in turn.

### 1. Procedural Due Process

Williams argues that the Board was biased because of Janoush's role as a Board member. An allegation of a biased decision maker implicates procedural due process, which is reviewed *de novo*. *Eacret v. Bonner Cnty.*, 139 Idaho 780, 784, 86 P.3d 494, 498 (2004).

Under both the Idaho and United States Constitutions, the right to procedural due process requires "a fair trial in a fair tribunal . . . ." *In re Murchison*, 349 U.S. 133, 136 (1955); *Eacret*, 139 Idaho at 784, 86 P.3d at 498 ("The Due Process Clause entitles a person to an impartial and disinterested tribunal . . . .").

"[D]ue process is not a concept rigidly applied to every adversarial confrontation, but instead is a flexible concept calling for such procedural protections as are warranted by the

particular situation." *Matter of Wilson*, 128 Idaho 161, 167, 911 P.2d 754, 760 (1996). Nonetheless, "an impartial decision maker is essential." *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970). "Impartiality" in this context means:

> the lack of bias for or against either party to the proceeding. Impartiality in this sense assures equal application of the law. That is, it guarantees a party that the judge who hears his case will apply the law to him in the same way he applies it to any other party.

*Marcia T. Turner, L.L.C. v. City of Twin Falls*, 144 Idaho 203, 209, 159 P.3d 840, 846 (2007) (quoting *Republican Party of Minn. v. White*, 536 U.S. 765, 775–76 (2002)). A decision maker will not be disqualified absent "a showing that the decision maker is 'not capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Eacret*, 139 Idaho at 785, 86 P.3d at 499 (quoting *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 493 (1976)). When a governing board sits "in the seat of a judge . . . [,]" due process applies "in the same way that it applies to judges." *Turner, L.L.C.*, 144 Idaho at 209, 159 P.3d at 846.

Although the participation of a biased decision maker in an agency proceeding is "constitutionally unacceptable," that participation "does not automatically invalidate" the decision resulting from the proceedings. *Floyd v. Bd. of Comm'rs of Bonneville Cnty.*, 137 Idaho 718, 725, 52 P.3d 863, 870 (2002). In *Floyd*, a decision of the Board of Commissioners of Bonneville County was challenged on the grounds that one of the commissioners, who had voted on the Board's final decision, was biased. *Id.* The Court noted that the allegedly biased commissioner had actual bias, which rendered his participation in the Board's decision "constitutionally unacceptable," but did not "automatically invalidate" the decision. *Id.* Instead, the Court looked to whether the commissioner's actual bias "resulted in harmless error." *Id.* at 726, 52 P.3d at 871.

> [I]t is the role of the Court to determine the effect of a conflicted vote[.] Initially, the court must determine whether a member with a disqualifying interest cast the decisive vote. If so, the ordinance must be invalidated. If the ordinance would have passed without the vote of the conflicted member, the court should examine the following three factors: (1) whether the member disclosed the interest or the other council members were fully aware of it; (2) the extent of the member's participation in the decision; and (3) the magnitude of the member's interest.

*Id.* (internal quotation marks omitted). In *Floyd*, the Board's decision resulted from the unanimous vote of three commissioners. *Id.* The Court reasoned "[t]here is no proof that the other two commissioners were biased, and the evidence is that they were fully aware" of the

11

biased commissioner's views. *Id.* The Court held that although the challenged commissioner's bias made it improper for him to sit as a member of the decision-making body, "due process would be satisfied, under the circumstances, by simply disregarding [the biased commissioner's] vote rather than nullifying the decision and remanding the case for rehearing or reconsideration by an entirely new body of commissioners." *Id.*

Here, there is no question that Janoush was biased—his personal stake in the Williams matter left him incapable of rendering a fair decision on the facts. As to the first prong of the *Floyd* test, the other Board members could not help but be aware of Janoush's bias. The letter he wrote to the Bureau complaining of Williams' actions was one of the triggers for the Williams investigation, and whether Williams logged into Janoush's RETECHS account was one of the central issues of the proceedings. As to the second prong, the extent to which Janoush participated in the decision is unclear. Janoush did not participate in the formal deliberation and decision-making for the Final Order, but it seems he remained involved with the process for quite some time before eventually recusing himself. At a March 2011 meeting, the Board considered a proposed settlement of the Williams matter. The minutes from that meeting suggest that Janoush did not recuse himself from the discussion regarding the proposed settlement but also did not vote on the issue. After the March 2011 meeting, an independent Hearing Officer was appointed to conduct an evidentiary hearing and make a recommendation to the Board as to whether Williams' conduct violated Idaho law as alleged in the Amended Complaint.

The record indicates that after the meeting in March 2011, the evidence and findings did not come before the Board again until February 2012 when the Board adopted the Hearing Officer's findings and conclusions. Janoush attended and testified at the proceedings in front of the Hearing Officer in August 2011, although he had at that point recused himself from the matter. In reference to Janoush as a witness, the Hearing Officer noted that

> [c]learly, Mr. Janoush was biased. Mr. Janoush went to great lengths to inform others of the inappropriate RETECHS access by Mr. Williams. Mr. Janoush believed that Mr. William's Idaho appraisal license should be revoked. He even went so far as to advise Mr. Williams to leave town and if he failed to do so, Mr. Janoush would see that Mr. William's license was revoked.

It was following that evidentiary hearing that the Board met again, in February 2012, to discuss the Hearing Officer's findings and recommendation. And, at that final meeting on the matter, as the Board's Final Order stated: "Board Chairman Brad Janoush recused himself from

12

the discussion and voting in the matter, and Vice-Chairman Paul Morgan took over the meeting." At the February 2012 meeting, the Board adopted the Hearing Officer's findings of fact and conclusions of law in their entirety. The hearing officer appears to have conducted a fair and impartial hearing and, indeed, found a great number of allegations against Williams to be unfounded. Williams conceded at oral argument that there was no reason to question the conduct or impartiality of the Hearing Officer who conducted the evidentiary hearing and made the findings that were later adopted by the Board. Were it not for the fact that the Hearing Officer performed the hearing in a professional and impartial manner, Williams' concerns may have had some justification.

As to the third prong—the magnitude of Janoush's interest—Janoush believed that Williams had threatened his business. He was extremely angry about Williams' unauthorized use of his user name and password, and told Williams to leave town. Janoush threatened Williams by telling him that if he did not leave town, Janoush would see to it that Williams' Idaho appraisal credentials were revoked.

Even without Janoush casting a vote, the Board's decision was unanimous. Although Janoush acted inappropriately by waiting so long to recuse himself, because the Board used a Hearing Officer to conduct the evidentiary hearing and make recommendations to the Board, because the Hearing Officer conducted a fair hearing, and because Janoush recused himself from the proceeding in which the Board adopted the Hearing Officer's findings, there were sufficient safeguards to protect against Janoush's bias inappropriately impacting the ultimate outcome of the case. Therefore, Williams' procedural due process rights were not violated.

### 2. Substantive Due Process

Williams argues that the Board's Order violates due process because the standards articulating the basis for discipline failed to adequately warn him as to what acts would subject him to discipline. Williams concedes that he raised this void-for-vagueness argument for the first time on appeal, but argues that the Court is sometimes willing to consider constitutional issues regardless of when first raised. Although this Court has been willing at times to consider constitutional issues not raised below, this exception to our general rule typically applies only if such consideration of an issue "is necessary for subsequent proceedings in the case." *Row v. State*, 135 Idaho 573, 580, 21 P.3d 895, 902 (2001). Therefore, because we do not today remand this case for subsequent proceedings, we need not consider whether the statutes in question are

13

unconstitutionally vague.

**C. Even if Williams has offered some conflicting evidence, there is substantial evidence in the record to support the Hearing Officer's findings.**

Williams argues that the Board's findings are not supported by the record. The Court will uphold an agency's findings if they are supported by substantial and competent evidence. *Kinney v. Tupperware Co.*, 117 Idaho 765, 769, 792 P.2d 330, 334 (1990). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Id.* It "is more than a scintilla, but less than a preponderance." *Id.*

### 1. Count One

Williams contends that he cannot be liable under Count One, which alleged that he improperly accessed the Wells Fargo RETECHS system through the user names and passwords of his competitors, because he claims "there is absolutely no evidence that" he "ever reviewed another appraiser's bid on an appraisal project, changed his own bid in order to bid lower than another appraiser, or received an appraisal project based upon this conduct." Williams does not dispute any of the Hearing Officer's findings of fact and conclusions of law. Instead, he simply argues there is not enough evidence to support a finding that he violated Idaho Code section 54-4107(1)(c) by making a substantial misrepresentation.

The following is a summary of the Hearing Officer's findings relevant to Count One. Wells Fargo provided each eligible appraiser with an individual user name and password, which an appraiser could use to log onto RETECHS. User names were the first three letters of the submitting appraiser's e-mail address, and passwords were initially created by Wells Fargo, but appraisers could change the passwords for their own accounts. Without permission, Williams accessed RETECHS on twelve to fifteen occasions with the user names and passwords of appraisers Brad Janoush and/or Brad Knipe. He was seen doing this by an employee, and he admits to doing it. Williams' business partner dissolved his business with Williams after learning of Williams' unauthorized RETECHS access, based upon the partner's belief that Williams engaged in inappropriate conduct by using other appraisers' user names and passwords to enter RETECHS.

By accessing RETECHS through other appraiser accounts, Williams had the opportunity to observe the dollar amount and estimated completion times other appraisers bid in response to Wells Fargo's requests for appraisal services. Prior to 2002, Janoush and Knipe's firm—Knipe

14

Janoush Knipe (KJK)—performed approximately $60,000–$70,000 worth of appraisal services for Wells Fargo. During 2002, KJK experienced a reduction in the amount of work it received from Wells Fargo, and Wells Fargo employees informed Janoush that it was assigning fewer projects to KJK because another appraiser was underbidding KJK, both as to price and time. The Wells Fargo employees also stated that the reduction of work was not related to the quality of KJK's work.

When Janoush learned that Williams was entering RETECHS using his user name and password, he performed a "test" by bidding $1,500 on a project for which he normally would have bid $3,500–$3,800, and by submitting an unusually short completion date. Janoush was underbid on price and completion time.

The Hearing Officer considered the potential biases of the witnesses who provided testimony at the hearing, noting that although Janoush had a clear bias, his testimony regarding the specific facts was credible. As to the employee who testified to seeing Williams use others' user names and passwords, the Hearing Officer found that he also had a reason for bias. Williams had terminated the employee's employment under circumstances the employee characterized as "heavy handed." Despite the obvious tension, the Hearing Officer found the employee went to great lengths to stay factual in his testimony and to not express his opinions about Williams. The Hearing Officer determined that the employee's testimony was credible with respect to the facts.

The Hearing Officer concluded that by entering RETECHS under a user name and password, Williams represented to Wells Fargo that he was the person authorized to use the assigned user name and password. By entering RETECHS under the names of Janoush and Knipe, Williams misrepresented his identity to Wells Fargo and misrepresented his authorization to access RETECHS under the other appraisers' accounts. The Hearing Officer found that the only conceivable reason for Williams to enter RETECHS twelve to fifteen times under other appraisers' user names and passwords was so that Williams could observe what other appraisers were bidding on specific appraisal projects. Therefore, Williams' action constituted a substantial misrepresentation in connection with Williams' work as a licensed appraiser.

Although Williams argues there is no evidence he was the winning bidder when Janoush continued to get underbid, this argument is irrelevant because the Hearing Officer found the violation occurred when Williams logged into the accounts of his competitors. Whether he caused them damage is beside the point. Although Williams attempts to challenge the Hearing

Officer's findings by offering conflicting evidence, there is substantial evidence in the record to support the finding that Williams is liable for improperly accessing the RETECHS system.

### 2. Counts Two and Three

Williams argues there is not sufficient evidence to support the Board's finding of violation of USPAP requirements for personal inspection of a property. Williams, however, has not included the USPAP rules in the record. Because of this failure, the Court cannot review his arguments and must assume the Board's decision was correct. *Rutter v. McLaughlin*, 101 Idaho 292, 293, 612 P.2d 135, 136 (1980) ("Where an incomplete record is presented to this Court, the missing portions of that record are to be presumed to support the action of the trial court.").

### 3. Count Eight

Williams contends there is insufficient evidence to support the finding that the appraisal report he signed was substantially misleading with respect to two adjoining properties in Donnelly, Idaho, which were intended for multi-use development. When Williams issued the Donnelly Appraisal, there was a pressurized sewer line adjacent to the appraised properties, but the sewer line and treatment plant were at capacity and only one residential hook-up was permitted. The North Lake Recreational Water and Sewer District, which served the subject properties, indicated it would be at least two years before sewer capacity would become available such that the appraised properties would be able to connect to sewer services for multi-use development purposes. Williams failed to report or analyze this issue in his appraisal. Furthermore, any connection to the sewer district's sewer lines for multi-use development purposes required that the property be annexed into the sewer district, a process that generally took about two years for larger developments or eight months to one year for smaller developments. This annexation process was not reported or analyzed in the Donnelly Appraisal. Before any annexations to the sewer district, development was required: a sewer plant expansion was necessary, a lift station would have to be built, and a new sewer line constructed for one to one and a quarter miles. This was not reported or analyzed in the Donnelly Appraisal.

The Hearing Officer found that without sewer service to the appraised properties, it was unlikely that a developer would be able to obtain a land use approval for any development or subdivision of the appraised properties. Yet, in the Donnelly Appraisal, the highest and best use for the appraised properties was identified as "mixed use," but sewer service was not available for a mixed use property. Despite this limitation on sewer service, Williams stated in the

16

Donnelly Appraisal that the North Lake Sewer District reported that water and sewer were across the road from the appraised properties. Williams failed to clarify that only one residential hook-up would be allowed from the appraised properties.

Williams does not dispute these findings, except to say that the Donnelly Appraisal does not contain any representation that sewer was immediately available to the subject property. This is simply incorrect. As previously discussed, the appraisal report stated that North Lake Water and Sewer is reportedly across the road from the property, indicating that service would be available to the appraised property. On Count Eight, Williams has again failed to establish the Hearing Officer's findings were not based upon substantial evidence.

**D. It was not improper for the Board to sanction Williams by revoking his license and imposing $4,000 in fines.**

Williams argues that even if he had violated Idaho law, the Board's decision to revoke his license, impose a $4,000 fine, and award attorney fees and costs against him is punitive in nature; does not fit the alleged violations; and ultimately was arbitrary, capricious, and an abuse of discretion. "[T]he selection of administrative sanctions is vested in the agency's discretion." *Knight v. Idaho Dep't of Ins.*, 124 Idaho 645, 650, 862 P.2d 337, 342 (Ct. App. 1993). "The purpose behind [professional] discipline is to protect the public from those unfit to practice . . . and to deter future misconduct; the purpose is not punitive." *Idaho State Bar v. Souza*, 142 Idaho 502, 505, 129 P.3d 1251, 1254 (2006).

On review, the district court found that the Board did not abuse its discretion with respect to the license revocation and $4,000 fine. It stated:

> it has not been shown that the Board abused its discretion in imposing the sanctions it did here, where Williams was found to have repeatedly accessed an appraisal web site using other persons' account information without their permission, certified that he had personally inspected properties that he had not actually personally inspected, and failed to provide relevant and accurate information concerning the sewer service availability in reference to a multi-million dollar multi-use development property sale.

Williams failed on appeal to engage in any meaningful discussion as to how the Board's sanctions were punitive or inconsistent with the alleged violations. Absent argument or authority this Court will not consider the issue. *Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008).

**E. It was improper for the Board to award itself attorney fees.**

17

The Board cross-appeals, arguing that it properly ordered Williams to pay the costs and fees it incurred while investigating and prosecuting Williams for his alleged violations of Idaho law. In its Final Order, the Board stated that under Idaho Code sections 54-4107, and 67-2609(a)(6) and (7), and IDAPA 24.18.01.525, it possessed the authority to require Williams "to pay the Board the costs and attorney's fees incurred by the Board in the investigation and prosecution of [Williams] regarding the four violations of the Board's laws and rules as set forth" in the Final Order. The Board then entered its Memorandum Decision and Order on Costs and Fees, assessing Williams $34,131.17 for fees and costs. The district court reversed this decision, finding that the Board's statutory authorization to recover fees did not include an award of attorney fees.

Idaho Code sections 54-4107 and 67-2609(a)(7) relate to the authority of the Board to investigate and discipline those individuals it has licensed. Idaho Code section 67-2609(a)(6) allows the Bureau "[t]o formulate rules for adoption" by the Board, which allow the Board "to recover costs and fees incurred in the investigation and prosecution of a licensee in accordance with the contested case provisions of chapter 52, title 67, Idaho Code, for a violation of laws" or the Board's rules. The Board promulgated the following rule: "[t]he Board may order a licensed or certified real estate appraiser to pay the costs and fees incurred by the Board in the investigation or prosecution of the licensee for violation of Section 54-4107(1), Idaho Code." IDAPA 24.18.01.525.02.

As a general rule, "attorney fees cannot be recovered in an action unless authorized by statute or by express agreement of the parties." *Idaho Power Co. v. Idaho Pub. Utils. Comm'n*, 102 Idaho 744, 750, 639 P.2d 442, 448 (1981). For example, in *Idaho Power*, the Court considered whether the Idaho Public Utilities Commission (IPUC) had the authority to make an award of attorney fees. *Id.* The Court determined that a review of the statutes relating to the powers of the IPUC revealed a "complete absence of any section which would empower the Commission to either adopt rules governing compensation for consumer intervenors in proceedings related to PURPA or to actually award any such compensation in the form of attorney fees or costs." *Id.* Because no statute authorized the IPUC to award attorney fees, it was without power to do so: "[t]he right to recover costs is statutory, and no cost can be granted without statutory authorization." *Id.*

The Court reviewed the instances in which the Idaho Legislature has authorized the

18

award of attorney fees and found that it occurs "in only a few clearly defined circumstances." *Id.* at 751, 639 P.2d at 449. From this review, the Court found it "clear that the Idaho legislature has provided for the award of attorney fees specifically when it so intends, and only when it so intends." *Id.* For example, the Idaho Code explicitly grants the Board of Medicine the authority to recover its attorney fees in disciplinary proceedings. That statute provides: "[t]he board shall make a determination of the merits of all proceedings, studies and investigations and, if grounds therefor are found to exist, may issue its order: . . . [a]ssessing costs and attorney's fees against the respondent physician for any investigation and/or administrative proceeding." I.C. § 54-1806A(9)(e). Similarly, the Idaho Real Estate Commission has an explicit statutory grant of authority to collect its attorney fees:

> The commission may . . . *assess costs and attorney's fees* for the cost of any investigation and administrative or other proceedings against any licensee who is found to have violated any section of the Idaho Code, the commission's administrative rules or any order of the commission.

I.C. § 54-2059 (emphasis added).

Recovery of attorney fees is only permitted in clearly defined circumstances. Because Idaho Code section 67-2609 does not explicitly provide for an award of attorney fees as opposed to general fees, it does not clearly define the Board's authority to recover attorney fees. Absent a statute explicitly granting it the authority to do so, the Board is not authorized to award itself attorney fees. Idaho Code section 67-2609 is not such a statute. For that reason, the Board's decision to award itself attorney fees was correctly reversed by the district court.

## F. Because neither party prevailed in full and because both parties acted with a reasonable basis in fact and law, neither party is entitled to attorney fees on appeal.

Both Williams and the Board contend they are entitled to an award of attorney fees on appeal. The Board argues that because it is a state agency, it is entitled under Idaho Code section 12-117 to an award of its fees and costs on the basis that Williams has appealed the findings of the Board in its Final Order without a reasonable basis in fact or law.

> Unless otherwise provided by statute, in any proceeding involving as adverse parties a state agency or a political subdivision and a person, the state agency, political subdivision or the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

I.C. § 12-117(1).

19

Here, the Board prevails on Williams' appeal and Williams prevails on the Board's cross-appeal. Because the Board prevails as a respondent but not as a cross-appellant, it is not entitled to its attorney fees. Similarly, because Williams prevails as a cross-respondent but not as an appellant, he is not entitled to attorney fees.

Furthermore, both parties acted with a reasonable basis in fact and law. The issues raised by the parties were nuanced and centered on unclear aspects of administrative law. Therefore, it was reasonable for the parties to pursue the appeal and cross-appeal. As such, an award of attorney fees is not appropriate.

## V.
## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court. Neither party is awarded costs or attorney fees on appeal.

Chief Justice BURDICK, and Justices EISMANN and HORTON and Justice Pro Tem WALTERS CONCUR.