IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 49298

|  |  |  |
|---|---|---|
| TODD A. WOOD, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | Boise, November 2022 Term |
| | ) | |
| v. | ) | Opinion Filed: June 9, 2023 |
| | ) | |
| IDAHO TRANSPORTATION DEPARTMENT, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Ned C. Williamson, District Judge.

The decision of the district court is affirmed.

Brian E. Elkins, P.C., Ketchum, for Appellant. Brian E. Elkins argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Timothy J. Stover argued.

_____

BRODY, Justice.

This appeal concerns the administrative suspension of Todd Wood's driving privileges, the rules for breath alcohol concentration (BAC) testing promulgated by the Idaho State Police (ISP) under IDAPA 11.03.01, and whether the provisions of Idaho Code section 18-8004(4) providing for the automatic admission of BAC results in administrative license suspension (ALS) hearings violate the separation of powers doctrine.

After a lawful traffic stop, Wood submitted to BAC testing. His results were 0.178 and 0.175, both in excess of Idaho's legal limit of 0.08. However, during the fifteen-minute pretest observation period, the deputy sheriff admittedly did not observe Wood for roughly three

1

minutes to ensure mouth alcohol was not present by way of burp, external contaminant, or otherwise prior to evidentiary testing. Wood challenged his suspension and argued that his BAC results were inadmissible because they had not been obtained in compliance with the required fifteen-minute pretest observation procedure. The ALS hearing officer disagreed, reasoning that ISP had promulgated rules making the pretest observation period only discretionary; thus, Wood's BAC test results were not based on unlawful procedure. Wood petitioned for judicial review and argued the BAC rules allowing for a discretionary observation period are violative of "due process" and "fundamental fairness." Wood further argued that the automatic admission of BAC results in his ALS hearing, pursuant to section 18-8004(4), unconstitutionally usurps the judicial branch's power over the admission of evidence. The district court rejected Wood's arguments and upheld his administrative license suspension. Wood appealed to this Court on the same grounds. For the reasons stated below, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In September 2020, a deputy sheriff conducted a lawful traffic stop of a vehicle driven by Wood. When the deputy contacted Wood, he observed that Wood exhibited signs of impairment, such as an "odor of alcoholic beverage, slurred speech and bloodshot eyes." Wood admitted to having consumed alcohol that day. The deputy administered field sobriety testing, with Wood performing poorly on three tests. The deputy then placed Wood in the back of his patrol vehicle and initiated BAC pretest procedures for the Lifeloc FC20 machine. The deputy checked Wood's mouth for substances that could interfere with the BAC test, and then told Wood, "Don't burp or belch for the next 15 minutes." During the "15-minute monitoring period," the deputy left to speak with passengers in Wood's vehicle, which was parked roughly thirty to forty feet from the patrol vehicle. While doing so, the deputy did not observe Wood for "approximately three minutes." After the fifteen-minute pretest period ended, Wood provided evidentiary BAC samples of 0.178 and 0.175, both in excess of Idaho's legal limit of 0.08.

Wood was cited for driving under the influence of alcohol ("DUI") in violation of Idaho Code section 18-8004 and was given a notice that his driving privileges would be suspended for 90 days for failing evidentiary BAC testing. The notice informed him that he had seven days to request a hearing and appeal the suspension of his driving privileges. Wood timely requested a hearing and roughly one month later, in October 2020, Wood's administrative license suspension hearing ("ALS Hearing") was held before hearing officer Robert Vogt ("ALS Hearing Officer").

At the hearing, Wood argued that a fifteen-minute pretest observation period was mandatory, and that rules promulgated by ISP (through its Forensic Services department ("ISPFS")) unlawfully made that period discretionary by redefining the definitions of "deprivation period," "observation period," and "monitoring period"—with interspersed "should" instead of "shall" language. Wood pointed out that prior case law in Idaho, manuals for the BAC testing devices, and ISP's standard operating procedures (SOPs) prior to 2010 had used all three terms interchangeably—and uniformly treated the fifteen-minute observation period as mandatory. From this, Wood maintained that his license suspension must be vacated under Idaho Code section 18-8002A(7)(d) because his BAC testing did not satisfy the requirement in Idaho Code section 18-8004(4) that the test be conducted in conformity with the standards for administering BAC testing approved by the ISP.

After the hearing, the ALS Hearing Officer issued a written decision and upheld Wood's automatic license suspension. The ALS Hearing Officer concluded that, based on the separate definitions of "Deprivation Period," "Monitoring Period," and "Observation Period" in Idaho Administrative Code ("IDAPA") 11.03.01.010.12, 010.17, and 010.18, respectively, a fifteen-minute period of actually observing Wood was discretionary and only required when "a single adequate sample is obtained." In Wood's case, two valid breath samples were obtained and correlated within 0.02 g/210L. *See* IDAPA 11.03.01.014.03.g–h. Thus, the ALS Hearing Officer concluded an observation period in Wood's case was discretionary, where failure to observe Wood for the full fifteen minutes was not fatal to the evidentiary testing process. From this, the ALS Hearing Officer determined that, "by a preponderance of the evidence the evidentiary test was performed in compliance with Idaho Code [section] 18-8004, the IDAPA rule, and Idaho State Police Standard Operating Procedure. Therefore, Wood's argument fails."

Wood moved for the ALS Hearing Officer to reconsider. On reconsideration, Wood argued that ISP's actions in changing the pretest observation period from mandatory to discretionary through SOPs since 2010, and through IDAPA 11.03.01 since 2014–15, violates "fundamental fairness and due process" such that the adopted rules are "void for failure to be properly promulgated through the Idaho Administrative Procedures Act." Wood further argued that Idaho Code section 18-8004(4)—to the extent that it allows for the automatic admission of BAC test results in ALS hearings—violates the "separation of powers between the legislative, judicial and executive branches of government."

Less than one month later, the ALS Hearing Officer denied Wood's motion for reconsideration. The ALS Hearing Officer reiterated its prior rule-based reasoning for why the deputy was not required to observe Wood for a complete fifteen minutes before the BAC results were admissible in Wood's ALS proceeding. However, the ALS Hearing Officer declined to address Wood's promulgation argument because "[t]he determination of whether rules were properly promulgated is outside the authority of the hearing officer, is beyond the scope of the ALS hearing, and is also not one of the five (5) grounds enumerated by statute upon which a hearing officer may vacate the ALS suspension per Idaho Code § 18-8002A(7)."

Roughly one month later, in December 2020, Wood timely petitioned the district court for judicial review of the ALS Hearing Officer's decision sustaining Wood's 90-day license suspension. In his opening brief, filed two months later in February 2021, Wood raised the same arguments with some refinement. Wood essentially maintained that the BAC testing rules promulgated by ISP that made the observation period discretionary violated "due process" and were "arbitrary and capricious" because they were made without regard to a report from a hearing officer during the rulemaking process who recommended to ISP, after a public hearing, that the pretest observation period be mandatory:

> Mr. Wood respectfully submits that what has happened to the SOP and IDAPA 11.03.01 since 2010 constitutes a violation of due process and fundamental fairness with how breath tests are administered in Idaho. *This is especially true when the SOPs went through the IDAPA approval process, had a public hearing, a hearing officer was appointed to preside over the matter—Michael Kane—who made specific recommendations that there "shall" be a 15 minute "observation period" before the administration of a breath test on a DUI suspect. And then ISPFS ignores it.*

(Emphasis added.)

However, throughout his opening brief, Wood also interspersed language familiar to a procedural due process argument (e.g., "fundamental fairness"). From this, the Idaho Transportation Department ("ITD") initially responded to Wood as raising a procedural due process challenge. However, in reply, Wood clarified that he "did not raise a procedural due process issue." Wood also emphasized that he was not challenging the BAC testing rules promulgated by ISP as having "no scientific basis." Instead, Wood was challenging the "method and manner" by which the BAC testing rules under IDAPA 11.03.01 were "promulgated" as violative of "due process":

> To reiterate, ITD is missing the issue being presented by Mr. Wood. Mr. Wood's argument is not the "current test has no scientific basis." It is his position that the *method and manner by which the IDAPA 11.03.01 and SOPs were promulgated violate due process*. That is the *first and primary level* of his arguments. The secondary effect of those changes is that they were done without any regard to scientific principles and protocols.

(Emphasis added.)

In his reply, Wood reiterated many facts from his opening brief to support his contention that the "method and manner" used by ISP to promulgate the BAC testing rules under IDAPA 11.03.01 was violative of "due process." Wood also added language from the standard of review under Idaho's Administrative Procedure Act (APA), Idaho Code section 67-5279, to describe the rulemaking by ISP as "arbitrary and capricious" and "made upon unlawful procedure." However, at no point did Wood articulate what rulemaking requirement(s) under the APA (I.C. §§ 67-5220 to -5231) the ISP violated, and how the ISP violated such requirement(s) when it promulgated the pretest observation rules under IDAPA 11.03.01 in 2014–15.

After briefing was complete, the parties had oral argument before the district court. The transcript of the oral argument is not in the record on appeal. However, after the oral argument, and "[b]ased upon the comments and questions raised by" the district court, Wood and ITD were given the opportunity to submit additional briefing on Wood's arguments, viewed as a "facial" or "as applied" constitutional argument. Thus, even without the transcript, it is apparent that confusion remained over how to conceptually understand Wood's "due process" and "fundamental fairness" argument.

Wood submitted supplemental briefing, and in doing so, made essentially the same "due process" argument challenging the "manner" and "method" ISP used to promulgate the BAC testing rules—while attempting to square it under an "as applied" and "facial" substantive due process framework. ITD also submitted supplemental briefing and attempted to address Wood's "manner and method" argument from the same substantive due process perspective. Neither Wood nor ITD addressed whether ISP properly promulgated the relevant observation period rules for BAC testing under IDAPA 11.03.01 in 2015 and 2020 according to the formal rulemaking requirements in the APA (I.C. §§ 67-5220 to -5231).

Two months after supplemental briefing was complete, in September 2021, the district court issued its decision and affirmed the decision of the ALS Hearing Officer. After noting that "procedural due process" was not at issue, the district court addressed Wood's "due process" and

"fundamental fairness" challenge to the "manner" and "method" by which ISP promulgated the BAC testing rules from a substantive due process framework. First, interpreting Wood's argument through a "facial" lens, the district court rejected Wood's position by reasoning that, even without a "mandatory observation period, the results [of a BAC test] can still be reliable." Because of this, the discretionary observation rules under IDAPA 11.03.01 (as well as the attendant SOPs) for BAC testing "are still reasonably related to the legitimate state objective of preventing drunk driving."

Second, the district court also rejected Wood's argument through an "as-applied" lens, reasoning that Wood presented no evidence that, in his case, a burp or belch occurred during the roughly three minutes the officer was not observing Wood. Moreover, the district court noted that Wood's BAC results were 0.178 and 0.175—"well within the 0.020 agreement" required by IDAPA 11.03.01.014.03.g–h when two evidentiary tests are administered. Finally, the district court rejected Wood's separation of powers argument that Idaho Code section 18-8004(4) usurps the judicial branch's coordinate power over the admissibility of evidence as "misplaced" because the Idaho Rules of Evidence do not apply in ALS hearings.

Wood timely filed a notice of appeal. On appeal, Wood again raises, along with his separation of powers argument, his argument that "due process" and "fundamental fairness" were violated by the "manner" and "method" by which ISP promulgated the rules for BAC testing under IDAPA 11.03.01 in 2015 and 2020. Both Wood and ITD argue they are entitled to an award of attorney fees on appeal under Idaho Code section 12-117.

## II. STANDARD OF REVIEW

An administrative license suspension hearing under Idaho Code section 18-8002A results in an "agency action" and is, therefore, governed by the APA. *Reagan v. Idaho Transportation Dep't*, 169 Idaho 689, 693, 502 P.3d 1027, 1031 (2021); *see* I.C. § 67-5240 ("Contested Cases"). Idaho Code section 18-8002A(8) authorizes judicial review of an ALS hearing officer's decision in the manner provided for judicial review of final agency actions under the APA (Chapter 52, Title 67, Idaho Code). On judicial review, the APA directs that the hearing officer's decision must be affirmed unless the court determines that the officer's "findings, inferences, conclusions, or decisions" are:

> (a)  in violation of constitutional or statutory provisions;
> (b)  in excess of the statutory authority of the agency;
> (c)  made upon unlawful procedure;

(d) not supported by substantial evidence on the record as a whole; or

(e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67-5279(3).

"On appeal, this Court reviews agency decisions directly, independent of the district court's determination." *Reagan*, 169 Idaho at 693, 502 P.3d at 1031 (quotations omitted). This "Court exercises free review over questions of law." *Williams v. Idaho State Bd. of Real Estate Appraisers*, 157 Idaho 496, 502, 337 P.3d 655, 661 (2014) (quoting *Neighbors for a Health Gold Fork v. Valley Cnty.*, 145 Idaho 121, 127, 176 P.3d 126, 132 (2007)). This Court may overturn an agency's decision if the agency erred in a manner specified in subsection (3)(a)–(e) under Idaho Code section 67-5279, and a substantial right of the challenging party has been prejudiced. I.C. § 67-5279(4). "If the agency action is not affirmed, it shall be set aside, in whole or in part, and remanded for further proceedings as necessary." I.C. § 67-5279(3).

## III. ANALYSIS

### A. Wood did not provide a cogent argument supported by authority to advance his challenge to the "manner" and "method" by which ISP and ISPFS promulgated rules in 2015 and 2020 for the administration of BAC tests.

From his motion for reconsideration before the ALS Hearing Officer through this appeal, Wood has consistently taken the position that, based on alleged defects in the rulemaking process, certain BAC testing rules under IDAPA 11.03.01 must be invalidated. The problem with this position is Wood never explains why—and under what authority—he is legally correct. In the absence of supporting authority and a cogent argument on appeal, understanding exactly what legal theory Wood is advancing has been perplexing at best. Thus, for the reasons discussed below, we do not consider Wood's challenge to ISP's (and ISPFS's) rulemaking on appeal.

Wood repeatedly states in his briefing—at all stages of this case—that he is challenging the "method" and "manner" by which ISP (and ISPFS) "promulgated" the BAC testing rules in 2014–15 and 2019–20 under IDAPA 11.03.01 as "arbitrary and capricious," violative of "due process," and contrary to "fundamental fairness." Wood's challenge centers around ISP's (and ISPFS's) actions (or lack of actions) leading up to and during the rulemaking process in 2014–15 and 2019–20. In particular, the central focus of Wood's argument is that ISP ignored—without explanation—the recommendation of a hearing officer during rulemaking in 2014–15 that the fifteen-minute observation period be made mandatory. As Wood explains himself, this alleged error in the "manner" and "method" by which ISP promulgated the BAC testing rules is the

"gravamen" of Wood's appeal here:

> [T]he Respondent fails to continue on and acknowledge that under the procedures of the APA at least 25 people requested in writing, by October 15, 2014 a public hearing concerning the proposed rulemaking by ISP to download the SOPs into IDAPA 11.03.01.
>
> A public hearing was held on November 13, 2014, and Michael Kane, an attorney from Boise, was appointed by the Idaho State Police (ISP) as Hearing Officer. As noted *supra*, after considering the testimony and documents submitted at the hearing, the Hearing Officer issued his Hearing Officer's Report. Again, as noted *supra* he made recommendations to ISP that the 15 minute Observation Period be mandatory—not discretionary.
>
> *That recommendation was blatantly disregarded by ISPFS as it continued, for the next six years, to tinker with IDAPA 11.03.01 and SOPs and eviscerate mandatory directives for a 15 minute observation period as recommended in the Kane Report.*
>
> *That is the gravamen of Mr. Wood's claims.* A system for Due Process is set up in the APA to provide oversight of proposed state agency rules and regulations, and a Hearing Officer was appointed by the very state agency seeking to implement the rules, with an attorney that has represented ITD in numerous appeals before this Court and the Idaho Court of Appeals, and he goes about making the recommendations pertinent in Mr. Wood's case requiring a mandatory observation period and it is then ignored by the ISPFS.
>
> The Due Process violation cannot be more clear. The actions by ISPFS have been arbitrary, capricious, and an abuse of discretion in violation of Idaho Code § 67-5279(3)(a)–(e).

(Emphasis added.)

Yet, as soon as Wood's legal analysis begins—it ends. This is fatal to his challenge on appeal. This Court has repeatedly held that if an issue is not supported by "any cogent argument or authority, it cannot be considered by this Court." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010); *see, e.g.*, *Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008); *Harrentsian v. Hill*, 161 Idaho 332, 339, 385 P.3d 887, 894 (2016); *Wittkopf v. Stewart's Firefighter Food Catering, Inc.*, 168 Idaho 203, 207, 481 P.3d 751, 755 (2021); *Owen v. Smith*, 168 Idaho 633, 647, 485 P.3d 129, 143 (2021). Idaho Appellate Rule 35(a)(6) requires appellants to do more than point to background facts underlying their position; it requires "reasons" those facts constitute legal error with "citations to the authorities, statutes and parts of the transcript and record relied upon." I.A.R. 35(a)(6). "Where an appellant fails to assert his assignment of error with particularity and to support his position with sufficient authority, those assignments of error are too indefinite to be heard by the Court." *Bach*, 148 Idaho at 790, 229

P.3d at 1152. Consequently, assignments of error that are not argued and supported in compliance with Rule 35(a)(6) are "deemed to be waived." *Id.*

In his briefing below and on appeal, Wood focuses on the factual background surrounding ISP's (and ISPFS's) promulgation of the rules under IDAPA 11.03.01 in 2014–15 and 2019–20 that made the pretest observation period discretionary. First, Wood points out that prior to 2010—and prior to the promulgation of the applicable rules—the fifteen-minute pretest period was treated as mandatory by ISP (and its predecessor agency) and that the terms "observation" and "monitoring" were used interchangeably to describe the fifteen-minute pretest period. *See, e.g.*, *State v. Carson*, 133 Idaho 451, 452–53, 988 P.2d 225, 226–27 (Ct. App. 1999) (quoting the manual approved by the Department of Law Enforcement [predecessor agency to the ISP] as requiring the officer administering a BAC test to "*[o]bserve* the subject for 15 minutes" and that "[d]uring this time, the subject may not smoke, consume alcohol, belch, vomit, use chewing tobacco, or have any other substance in the mouth." (emphasis added)); *Wilkinson v. State, Dept. of Transp.*, 151 Idaho 784, 264 P.3d 680 (Ct. App. 2011) (quoting the operator's training manual for the Intoxilyzer 5000 approved by the ISP as requiring the officer administering a BAC test to *"[m]onitor* the subject for 15 minutes." (emphasis added)).

Next, Wood points out that starting in 2010—but prior to the promulgation of the applicable rules—ISPFS began inserting "wiggle room" and "weasel words" into certain SOPs for the administration of BAC tests in response to results being deemed inadmissible when the testing officer failed to follow the procedure establishing the test's reliability. *See State v. Besaw*, 155 Idaho 134, 144, 306 P.3d 219, 229 (Ct. App. 2013). In support of this factual background to ISP's and ISPFS's rulemaking, Wood included copies of the emails and memos between individuals at ISPFS responsible for these "disturbing" comments as discussed by the Court of Appeals in *Besaw*, 155 Idaho at 144, 306 P.3d at 229 ("While we do not endorse or condone such an approach to the ISP's statutorily-assigned duty to define breath testing procedures and standards, we cannot say that the emails in and of themselves, or any other evidence in the record, establishes that the test procedures actually authorized by the SOPs and applied in Besaw's case are incapable of producing reliable results.").

Next, Wood points to the apparent catalyst for ISP's and ISPFS's first attempt at promulgating the SOPs for BAC testing into rules: a 2014 decision by a district court in Kootenai County in *State v. Nauert*, that the SOPs for administering BAC tests were not formally

promulgated as "rules" under the APA; thus, they did not have the "force and effect of law" to allow for the automatic admission of BAC results under Idaho Code section 18-8004(4). *See* CV-2013-10176, slip copy at 7–10 (1st Dist. Ct. Idaho July 3, 2014) (Stegner, J.); *see also State v. Haynes*, 159 Idaho 36, 45, 355 P.3d 1266, 1275 (2015) (declaring the same 2013 SOPs to be "rules" that were "void" under Idaho Code section 67-5231(1) for failure to be adopted in "substantial compliance" with the rulemaking requirements of the APA).

Roughly three months after the decision in *Nauert*, on October 1, 2014, ISP published a notice of temporary and proposed rulemaking under IDAPA 11.03.01. *See* Idaho Admin. Bulletin, Dkt. No. 11-0301-1401 (Oct. 1, 2014, Vol. 14-10), at 171. In its rulemaking notice, ISP represented that it was merely "add[ing] current standard operating procedures [SOPs] published by Idaho State Police Forensic Services (ISPFS) for alcohol analysis and breath testing to administrative rule." *Id*. In other words, ISP took the SOPs treated as a nullity in *Nauert* (and later declared void in *Haynes*) and noticed each as temporary and proposed rules without any changes. *See id*. ("These rules have previously been part of the standard operating procedure documents published by ISPFS for use in court testimony.").

Next, Wood points out that, after the notice of proposed rulemaking was posted in the Bulletin, a public hearing on the proposed BAC testing rules was requested by at least twenty-five persons pursuant to Idaho Code section 67-5222. ISP noticed the hearing date for November 2014, Idaho Admin. Bulletin, Dkt. No. 11-03-1-1401 (Nov. 5, 2014, Vol. 14-11), at 43, and selected Michael Kane as the hearing officer—an attorney with an apparent understanding of Idaho's BAC testing procedures and case law by virtue of his prior work in representing ITD, including in a number of appellate cases. *See In re Schroeder*, 147 Idaho 476, 476, 210 P.3d 584, 585 (Ct. App. 2009); *Feasel v. Idaho Transp. Dept.*, 148 Idaho 312, 312, 222 P.3d 480, 481 (Ct. App. 2009); *Wheeler v. Idaho Transp. Dept.*, 148 Idaho 378, 380, 223 P.3d 761, 764 (Ct. App. 2009); *Bell v. Idaho Transp. Dept.*, 151 Idaho 659, 660, 262 P.3d 1030, 1032 (Ct. App. 2011).

At the public hearing in November 2014, two individuals testified in support of the temporary and proposed rule: Jeremy Johnston, a certified toxicologist and the alcohol discipline leader for ISPFS, and Jared Olson, an impaired driving expert employed by the Idaho Prosecuting Attorney's Association. Olson also submitted a written presentation in support of the proposed regulations. On appeal, Wood points out that Johnston and Olson were involved in inserting the purported "wiggle room" and "weasel words" into the SOPs for BAC testing since

2010—and the "disturbing" comments as noted in *Besaw*, 155 Idaho at 144, 306 P.3d at 229. On the other side, Thomas McCabe, an attorney in private practice, testified in opposition to those portions of the temporary and proposed rule in which ISP had inserted the word "should" in place of the words "must" or "shall" present in previous publications of SOPs for BAC testing. In addition, Brian Elkins, an attorney in private practice (and the same attorney representing Wood in this appeal), opposed the insertion of discretionary "should" language through a written comment. In support of his comment, Elkins attached scientific publications that indicated the fifteen-minute pretest observation period is considered a "necessary" procedural safeguard in BAC testing to ensure reliability of the test results. (Elkins did not testify at the hearing.)

Eight days after the public hearing, Hearing Officer Kane issued a written memorandum that summarized the hearing and recommended that ISP adopt, among other things, a rule with language that makes the fifteen-minute pretest observation period mandatory. Although we do not have the testimony from the hearing in the record on appeal, it appears Hearing Officer Kane made this recommendation because a mandatory fifteen-minute pretest period is an established "Idaho standard" and it did not appear "that ISP intend[ed] to abandon the fifteen minute test."

This brings us to the central fact underpinning Wood's challenge to the pretest observation rules as promulgated by ISP (and ISPFS). Roughly two months after Hearing Officer Kane issued his summary and recommendations, in January 2015, ISP (and ISPFS) published notice of its adopted and "pending" rule for the administration of BAC tests under IDAPA 11.03.01 that became final at the end of the 2015 legislative session, i.e., a final rule with the "force and effect of law[,]" *Pizzuto v. Idaho Dep't of Correction*, 170 Idaho 94, __, 508 P.3d 293, 296 (2022). *See* Idaho Admin. Bulletin, Dkt. No. 11-0301-1401 (Jan. 7, 2015, Vol. 15-1), at 91–95. The "concise explanatory statement" in that notice—which is required to include, among other things, ISP's "[r]easons for adopting the rule" and an explanation of any changes between the "proposed" and "pending" rule, I.C. § 67-5224(2)—explained that ISPFS was "amending the text of the pending and temporary" rule in numerous ways "[p]ursuant to recommendations of [H]earing [O]fficer [Kane]." Idaho Admin. Bulletin, Dkt. No. 11-0301-1401 (Jan. 7, 2015, Vol. 15-1), at 91–92. However, Wood points out on appeal that the amended text of the pending rule did not adopt Hearing Officer Kane's recommendation regarding the fifteen-minute pretest observation period.

Instead, Wood points out that the amended text of the pending rule (which became final

in 2015), approved the change making the fifteen-minute observation period a discretionary procedure. For example, the proposed rule, which treated the terms "monitoring period," "deprivation period," and "observation period" as interchangeably synonymous for defining the fifteen-minute pretest period "in which an officer *monitors* the test subject/individual" was amended to provide separate definitions for the terms "deprivation period" and "monitoring period." *Compare* Idaho Admin. Bulletin, Dkt. No. 11-0301-1401 (Oct. 1, 2014, Vol. 14-10), at 174 (emphasis added) *with* Idaho Admin. Bulletin, Dkt. No. 11-0301-1401 (Jan. 7, 2015, Vol. 15-1), at 92–93. In the pending rule, "monitoring period" now meant a "minimum *deprivation period* of fifteen (15) minutes immediately prior to evidentiary breath alcohol testing during which the subject/individual *should be observed* by the officer and any belch/burp/vomit/regurgitation *should* be noted by the operator." Idaho Admin. Bulletin, Dkt. No. 11-0301-1401 (Jan. 7, 2015, Vol. 15-1), at 92–93 (emphasis added). The term "deprivation period" now meant the fifteen-minute period immediately prior to evidentiary testing "during which the subject/individual *shall not* be allowed to smoke, drink, or eat substances containing alcohol." *Id.* (emphasis added). Under these definitions, the "deprivation period" can apparently be satisfied without the officer actually observing the test subject/individual for a complete fifteen minutes.

Next, Wood points out that, although the pending rule states the pretest monitoring period "shall" be administered, he contends that this "shall" is illusory because the use of the term is couched in terms of "should," e.g., where the pending rule states the monitoring period "should start over" if the "operator" (who is not required to actually observe the test subject/individual), suspects "mouth alcohol" is present (e.g., "silent burp, belch, vomit, regurgitation"). *See* Idaho Admin. Bulletin, Dkt. No. 11-0301-1401 (Jan. 7, 2015, Vol. 15-1), at 94–95. Wood essentially contends that ISP (and ISPFS) "arbitrarily and capriciously" eliminated the previously mandatory fifteen-minute pretest observation period, and instead made a "complete breath alcohol test" only require two valid breath samples, preceded by air blanks, where the two results differ by no more than "0.02 g/210L alcohol." *See id.* Wood further shows that, under the pending rule, only when a "single test result is used" is the operator of the test required to actually observe the test subject/individual for a complete fifteen-minute pretest period. *See Id.*

Wood next points to rulemaking from 2019 to 2020 when ISP (and ISPFS) further defined the discretionary fifteen-minute pretest period language originally adopted in 2015 under

IDAPA 11.03.01. *See* Idaho Admin. Bulletin, Dkt. No. 11-0301-1901 (Nov. 6, 2019, Vol. 19-11), at 296–302. During the 2019-20 rulemaking, no amendments were made between the proposed rule in 2019 and the pending rule that became final in 2020. *See* Idaho Admin. Bulletin, Dkt. No. 11-0301-1901 (Jan. 1, 2020, Vol. 20-1), at 241–42. The pending rule (now a final rule) further divided the definitions of the (once synonymous) "Deprivation Period," "Monitoring Period," and "Observation Period" to reinforce that the BAC test operator is not required to personally observe the test subject/individual so long as two valid evidentiary tests are collected and do not differ "by more than 0.02 g/210L alcohol." *See* Idaho Admin. Bulletin, Dkt. No. 11-0301-1901 (Jan. 1, 2020, Vol. 20-1), at 241–43; *see also* IDAPA 11.03.01.010.12 ("Deprivation Period"), 010.17 ("Monitoring Period"), 010.18 ("Observation Period"), 11.03.01.014.03d–h ("Administration" of BAC testing). The "concise explanatory statement," which states the reasons for adopting this pending rule, does not reference Hearing Officer Kane's relevant recommendations from 2015 or that a similar public hearing took place during the 2019–20 rulemaking. Idaho Admin. Bulletin, Dkt. No. 11-0301-1901 (Jan. 1, 2020, Vol. 20-1), at 240.

It is important to note that the rulemaking records from 2014–15 and 2019–20, pursuant to Idaho Code section 67-5225, are not in the record on appeal. A rulemaking record is required to contain "the agency's responses" to "submissions" and "comments" and "any other materials or documents prepared" during the notice-and-comment period in which Hearing Officer Kane made his relevant recommendations. *See* I.C. § 67-5225(2)(b), (e). Thus, it is unclear whether, as Wood contends, ISP (and ISPFS) never considered or responded to Hearing Officer Kane's recommendation—or a similar comment—during either rulemaking. Nevertheless, Wood has consistently emphasized these background facts as nothing other than ISP (and ISPFS) "ignoring" Hearing Officer Kane's recommendations during the rulemaking process without explanation.

The problem with Wood's argument on appeal (like the problem the district court faced before it allowed supplemental briefing)—is that Wood never makes a cogent legal argument. In other words, Wood does not apply the above background facts to legal reasons (with the support of authority or statutes) for why these facts entitle him to the relief he seeks. Wood repeats that the "gravamen" of his challenge focuses on the "manner" and "method" by which ISP (and ISPFS) have "promulgated" the above BAC rules as being violative of "due process,"

"fundamental fairness," and as "arbitrary and capricious." Wood then asks this Court to declare the rules that made the fifteen-minute observation period discretionary either unconstitutional or "void" for ISP's (and ISPFS's) failure to substantially comply with formal rulemaking requirements under the APA (I.C. § 67-5231(1)).

Yet, on appeal and below, Wood never provides a cogent argument under the only legal frameworks that his "manner" and "method" challenge could be reasonably understood: procedural due process, substantive due process, or defective rulemaking (I.C. §§ 67-5220 to -5231). Before the district court, Wood specifically rebuked ITD's contention that Wood was making a procedural due process challenge; thus, the district court understandably attempted to make sense of Wood's challenge through the only other "due process" perspective available: substantive due process. On appeal, and in response to questions from this Court at oral argument, Wood further remarked that he was *not* making a "rulemaking" challenge under the APA while at the same time arguing that the actions of ISP and ISPFS *during the 2014–15 and 2019–20 rulemaking process* were "arbitrary and capricious."

At one point, Wood clarifies that his position is that he has a "substantive due process right" *in* the rulemaking process itself that was violated by ISP and ISPFS's procedurally defective actions. However, Wood has supplied no legal analysis or authority in support of this novel proposition. In any event, this position conflates an alleged procedural defect in the statutorily based rulemaking process under the APA with a constitutional defect of "due process." To the extent Wood makes this argument, it is overstated. The violation of a procedure that is required by statute does not automatically result in the violation of a constitutional provision, unless of course the procedural requirement is identical to the constitutional requirement such that a violation of one is a violation of the other. *See Virginia v. Moore*, 553 U.S. 164, 178 (2008).

Moreover, when Wood's "manner" and "method" argument is understood as the procedural rulemaking challenge that it is—i.e., that the relevant rules are "voidable" because they were not "adopted in substantial compliance with the requirements" for rulemaking under the APA (I.C. § 67-5231)—Wood's briefing does not satisfy Rule 35(6)(a). The "gravamen" of Wood's challenge is aimed at an alleged procedural deficiency in the formal rulemaking process under the APA. *See* I.C. §§ 67-5220 to -5231 (requiring agencies to take certain steps to promulgate rules). Namely, that ISP (and ISPFS) improperly ignored the recommendations of

Hearing Officer Kane during the rulemaking process without explanation and promulgated rules that appear aimed at avoiding the suppression of BAC test results by inserting discretionary language. Wood's above factual contentions certainly "raise a suspicious judicial eyebrow[.]" *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 583 (1996) (quoting *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 481 (O'Connor, J., dissenting)). Nevertheless, Wood never points to *what* requirement(s) ISP (and ISPFS) allegedly failed to substantially comply with when rulemaking in 2014–15 and 2019–20, and *how* it failed to comply with those requirements.

Wood contends that there is no precedent from this Court to draw from that deals with rulemaking under the APA in this area. Wood is correct. However, that this Court has not spoken in this area does not obviate the requirement under Rule 35(6)(a) to make a cogent legal argument—supported by authority—for what this Court *should* say when it does speak. Wood could have done this through authority readily available (controlling or not): e.g., the statutory requirements for rulemaking under Idaho's APA (I.C. §§ 67-5220 to -5231); the requirements for rulemaking under the Idaho Rules of Administrative Procedure of the Attorney General (IDAPA 04.11.01.800 to 860); and the well-developed precedent for "notice-and-comment" rulemaking under the Federal Administrative Procedure Act (5 U.S.C. § 553) on what constitutes "arbitrary and capricious" rulemaking, *see, e.g.*, *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 38–46 (1983) (reviewing an agency's "concise general statement" under the federal APA that spent roughly seventeen pages explaining why the agency was rescinding a passive restraint requirement).

"We do not presume error on appeal[.]" *Miller v. Caller*, 140 Idaho 213, 218, 91 P.3d 1117, 1122 (2004). Our legal system is adversarial in nature—not inquisitorial. *See State v. Hall*, 163 Idaho 744, 806, 419 P.3d 1042, 1104 (2018). "What makes a system adversarial rather than inquisitorial is . . . the presence of a judge who does not (as an inquisitor does) conduct the factual and legal investigation himself, but instead decides on the basis of facts and arguments pro and con adduced by the parties." *McNeil v. Wisconsin*, 501 U.S. 171, 181 n.2 (1991). Consequently, this Court cannot sit as an inquisitor to conduct a legal investigation whenever it is faced with eyebrow-raising facts unaccompanied by cogent legal argument. In sum, without a cogent legal argument from Wood on appeal in this area, we cannot consider Wood's challenge to ISP's (and ISPFS's) rulemaking to decide whether it was so defective that the challenged rules should be declared void. For these reasons, we deem this issue waived.

**B. Wood's separation of powers argument is meritless because the judicial power to control the admission of evidence in court does not apply in ALS proceedings.**

Wood next argues that the rulemaking power granted by Idaho Code section 18-8002A(3) to ISP to promulgate rules for the automatic admission of BAC test results in "any proceeding" through Idaho Code section 18-8004(4) violates the separation of powers doctrine. Wood argues that Idaho Code section 18-8004(4) is unconstitutional because it is a "proclamation from the legislative branch, telling the judicial branch what will be admissible in court with respect to BAC testing" in a DUI case and the attendant ALS proceeding. ITD responds that Wood's separation of powers argument is misplaced because the rules of evidence that govern judicial proceedings do not apply in ALS proceedings. As to this argument, ITD is correct.

The separation of powers doctrine prevents the legislature from depriving "the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government[.]" Idaho Const. Art. V, § 13. One of the coordinate powers of the judicial branch is this Court's inherent power to make rules governing practice and procedure in Idaho's state courts. *See State v. Samuel*, 165 Idaho 746, 756, 452 P.3d 768, 778 (2019); I.C. § 1-212. This includes the rules that govern the admission of evidence. *State v. Knee*, 101 Idaho 484, 485–86, 616 P.2d 263, 264–65 (1980). However, the admissibility of evidence in an ALS proceeding is not governed by the Idaho Rules of Evidence. *See* I.C. § 67-5251; I.R.E. 101(b). Instead, it is governed by Idaho Code section 67-5251. This is because an ALS proceeding is an administrative proceeding, not a judicial one. Under section 67-5251, the legislature has instructed that evidence may be admitted in an ALS proceeding if, among other things, it is not irrelevant, unduly repetitious, excludable on constitutional, statutory, or privilege grounds, and so long as it is "of a type commonly relied upon by prudent persons in the conduct of their affairs." I.C. § 67-5251(1). Thus, Wood's separation of powers argument is misplaced because the constitutional prerogative of the judicial branch to control the admission of evidence in a judicial proceeding is simply not at play in an ALS proceeding.

Wood acknowledges this problem and attempts to work around it based on the principle from *Regan v. Idaho Transportation Department*, 169 Idaho 689, 699, 502 P.3d 1027, 1037 (2021), that searches by which BAC evidence is obtained for purposes of an ALS proceeding must satisfy constitutional standards. However, Wood's reliance on *Regan* is also misplaced. Our decision in *Regan* clarified that the Fourth Amendment sets the floor for the admission of BAC evidence whether it is used in a DUI proceeding or the attendant ALS proceeding. *Id*. at 699, 502

P.3d at 1037. In other words, *Regan* set a *constitutional* floor for the admission of evidence in ALS proceedings—not a judicially adopted floor based on the Idaho Rules of Evidence. *See id*. Wood does not argue the admission of BAC results through Idaho Code section 18-8004(4) violates a constitutional floor for the admission of evidence in an ALS proceeding. Thus, *Regan* simply does not apply to support Wood's position. For these reasons, we conclude that the admission of Wood's BAC results through Idaho Code sections 18-8004(4) and 67-5251 in his ALS proceeding does not violate the separation of powers doctrine.

### C. Attorney Fees are awarded to ITD under Idaho Code section 12-117.

Both Wood and ITD argue they are entitled to an award of attorney fees on appeal under Idaho Code section 12-117. That statute provides authority for a court to award attorney fees to the prevailing party in proceeding involving a state agency, and provides in relevant part:

> (1) Unless otherwise provided by statute, in any proceeding involving as adverse parties a state agency or a political subdivision and a person, the state agency, political subdivision or the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, *if it finds that the nonprevailing party acted without a reasonable basis in fact or law*.

I.C. § 12-117(1) (emphasis added).

Here, ITD is the overall prevailing party and Wood is the nonprevailing party. Wood advanced a reasonable basis *in fact* for his position that ISP and ISPFS improperly promulgated the BAC testing rules under IDAPA 11.03.01 in 2015 and 2020. However, as explained above, Wood did not articulate a cogent argument for why those facts required this Court to declare those rules void for failure to substantially comply with formal rulemaking under the APA. In other words, Wood did not act with a reasonable basis *in law*. Section 12-117(1) provides for fees if the nonprevailing party acts without a reasonable basis in fact "or" in law. Accordingly, ITD is entitled to reasonable attorney fees on appeal.

## IV. CONCLUSION

The decision of the district court upholding the 90-day suspension of Wood's driving privileges is affirmed. We award reasonable attorney fees on appeal to ITD. Costs are awarded to ITD under Idaho Appellate Rule 40.

Chief Justice BEVAN and Justices MOELLER and ZAHN CONCUR.

STEGNER, J., specially concurring.

I agree with the majority that the rulemaking process used by the Idaho State Police ("ISP") and its Forensic Services department ("ISPFS") "certainly 'raise[s] a suspicious judicial eyebrow[.]'" *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 583 (1996) (quoting *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 481 (O'Connor, J., dissenting)). In my view, the blood alcohol content ("BAC") testing rules that rendered the fifteen-minute observation period discretionary were not promulgated in accordance with the Idaho Administrative Procedure Act ("IDAPA" or "Idaho's APA"). Thus, I would declare the BAC testing rules void. However, due to Wood's failure to adequately raise and pursue that argument, I am constrained to concur with the majority and affirm the district court's decision to uphold the 90-day suspension of Wood's driving privileges.

Pursuant to Idaho's APA, ISP was required to provide "an opportunity for oral presentation" during the notice and comment period of the rulemaking process. I.C. § 67-5222(2). In general, these oral presentations and other materials making up the "rulemaking record" do not need to provide "the exclusive basis" for agency action "on that rule or for judicial review thereof." I.C. § 67-5225(3). However, after the "notice and comment period" closes, "the agency *shall* consider fully all written and oral submissions respecting the proposed rule." I.C. § 67-5224(1) (italics added); IDAPA 04.11.01.835.01 (same). Following this consideration, the agency must post a notice in the Bulletin containing the version of the rule it has adopted, i.e., the "pending rule" (I.C. § 67-5201(16)), along with "a concise explanatory statement" containing, among other things, the "[r]easons for adopting the rule" and "the reasons for any changes" between the proposed and pending rule. *See* I.C. § 67-5224(2) (listing other required content of the notice).

When an agency posts notice of its adopted and pending rule, the agency's "concise explanatory statement" is required to include the central reasons for both adopting that version of the rule and rejecting relevant and material written comments, data, and oral presentations that were made regarding the proposed rule during the notice and comment period. I.C. § 67-5224(1), (2)(a)–(b). Although Idaho appears to have no case law on what precisely constitutes an adequate "concise explanatory statement"—and Idaho's APA does not explicitly require an agency to explain why the agency is rejecting relevant written comments or oral presentations—requiring as much is implicit in the requirements that the "concise explanatory statement" contain the "[r]easons for adopting the rule"; is a product of reasoned decision-making, i.e., is not arbitrary,

capricious, or an abuse of discretion; and is formulated after the agency has "consider[ed] fully all written and oral submissions respecting the proposed rule[.]" I.C. §§ 67-5224(2)(a), -5279(2), -5224(1). For an agency's rulemaking to constitute reasoned decision-making under Idaho's APA, i.e., rulemaking that is not arbitrary, capricious, or an abuse of discretion, the agency must explain its rejection of relevant written comments or oral presentations within the required "concise explanatory statement." *See* I.C. § 67-5279(2)(d).

In my view, formal rulemaking under Idaho's APA requires agencies to explain why they are rejecting relevant, and material written comments, data, and oral presentations within the "concise explanatory statement." Turning to the case at bar, I would hold that ISP's failure to explain its rejection of Hearing Officer Kane's recommendations renders the challenged rules void. Given the history regarding the legal issues surrounding the BAC evidentiary testing rules coupled with Kane's apparent expertise, the ISP acted in an arbitrary and capricious manner when it decided to render the fifteen-minute waiting period discretionary. This Court cannot adequately perform its duty to review agency decisions if the agency does not explain its decision. At worst, ISP not only blatantly disregarded Kane's recommendations, but it also intentionally misled the public by suggesting it was actually adopting Kane's recommendations. At the very least, ISP (and ISPFS) ignored the recommendations of its appointed hearing officer during the rulemaking process without explanation and promulgated rules that appear aimed at avoiding the suppression of BAC test results by inserting discretionary language. (All this occurred with the backdrop of internal agency emails indicating that the agency should seek to inject "wiggle room" and "weasel words" into the standard operating procedures in an effort to thwart legal challenges to administrative license suspensions.) If ISP had legitimate reasons for rejecting Kane's recommendations, those reasons have not been shared—either with this Court or with the public. In addition, the agency incorrectly implied that it was relying on its own hearing officer in promulgating the regulations. Not only is there no explanation for what it did, what has been provided is contrary to fact. The failure to do so should require us to declare the challenged rules void. *See* I.C. § 67-5321 (providing that rules promulgated by an agency are "voidable unless adopted in substantial compliance with the requirements of" Title 67, Chapter 52 of the Idaho Code).

However, during oral argument before this Court, counsel for Wood definitively stated, "It is clear to me that I need to emphasize that this is not a rulemaking case. We're not

complaining about what happened as far as the promulgation of IDAPA 11.03.01 in 2014 and subsequent changes since then." Instead, Wood's counsel explained that the legal avenue through which he was challenging the BAC testing rules was due process. This failure to adequately raise the rulemaking issue—and the subsequent concession that the issue had not been raised—renders me unable to conclude the BAC testing rules are void under the arguments presented. As a result, I concur with the majority's decision.